**ALBERT AND J. M. ANDERSON MANU-
FACTURING COMPANY**

v.

**The UNITED STATES.**

No. 135–53.

United States Court of Claims.

Oct. 2, 1956.

Allen H. Gardner, Washington, D. C., for plaintiff. Morris, Pearce, Gardner & Pratt, Washington, D. C., were on the brief.

Philip R. Miller, Washington, D. C., with whom was Charles K. Rice, Asst. Atty. Gen., for defendant. Andrew D. Sharpe, Washington, D. C., was on the brief.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

LITTLETON, Judge.

This is a case growing out of the renegotiation of a war contract and the tax adjustments necessary under the statutes in connection with the excessive profits first determined and collected by the Secretary of War and later reduced on appeal by the United States Tax Court.

The plaintiff seeks to recover $104,400 representing an alleged overpayment of excess profits taxes for the calendar year 1942 (with interest on the amount of $116,000), or in the alternative, to recover interest on the amount of $11,600, which represents a post-war refund credit. The defendant moves for a summary judgment.

The facts alleged in the petition and agreed upon by the parties for the purposes of this motion are essentially as follows:

The plaintiff filed its 1942 income and excess profits tax returns and paid the tax shown thereon. On August 14, 1944, the Secretary of War issued the unilat-eral order, provided for by section 403 of the Renegotiation Act, 50 U.S.C.A. Appendix, § 1191, asserting that plaintiff had realized $400,000 in excessive profits during 1942, and he collected this sum from plaintiff in September 1944, by crediting the plaintiff with excess profits taxes of $320,000 paid by it on the determined excessive profits of $400,000 and by withholding the balance of $80,000 from other sums due plaintiff.

The plaintiff contested the determination of the Secretary of War through a petition to the Tax Court, in Docket No. 105–R. On January 31, 1949, the Tax Court held (12 T.C. 132) that plaintiff's profits for 1942 subject to renegotiation were excessive only in the amount of $255,000 rather than the $400,000 as determined by the Secretary of War, a reduction of $145,000. The Tax Court decision, from which there was no appeal, became final on May 2, 1949.

The War contracts Price Adjustment Board in the War Department was charged with the duty of carrying out the decisions of the Tax Court in renegotiation determination cases and of authorizing the repayment to contractors of appropriate portions of alleged excessive profits which had been determined by the Tax Court not to be excessive. This Board accepted the tax computations made by the Bureau of Internal Revenue showing that plaintiff's 1942 excess profits taxes should be increased by $116,000 as a result of the Tax Court's decision that the excessive profits were only $255,-000. The Price Adjustment Board accordingly reduced the amount of $145,-000 by $116,000 to a net amount of $29,-000 and caused that amount to be refunded to plaintiff in December 1949, with interest as provided by the Renegotiation Act.

On June 26, 1950, the Bureau of Internal Revenue issued to plaintiff a check for $11,600 representing a 10 percent post-war credit to which plaintiff was entitled on the $116,000 increase in excess profits tax for 1942. The plaintiff filed claims for refund, which were rejected, and this suit was timely filed.

The plaintiff takes the position that it is entitled to repayment of the $145,000 without reduction by the $116,000 because the $116,000 represents an excess profits tax deficiency that was barred from collection by the statute of limitations. The defendant contends that when the contractor appeals from the determination of the Secretary of War or the War Contracts Price Adjustment Board adjustments made by the Secretary of War or the Board are tentative and not final, and that when on appeal the Tax Court finally determines the amount of excessive profits the recomputation of the appropriate taxes necessarily and automatically follows, and that the statute of limitations is not involved because it is not strictly a tax deficiency case but a working out of an excessive profits case of renegotiations of a war contract.

The Renegotiation Act, 56 Stat. 245, as amended, 50 U.S.C.A. War Appendix, § 1191, provided for the renegotiation of certain Government contracts and set up the machinery for the repayment, recovery or collection of excessive war profits. The Act, as amended, provided for the determination of excessive profits based upon standards set out therein by agreement of the contractors and the Secretary involved or the War Contracts Price Adjustment Board, as the case may be, or if the parties were unable to agree, by a unilateral order by the Secretary or the Board. The unilateral order was to become final unless an appeal was then taken by the contractor to the Tax Court. The filing of an appeal did not necessarily stay the execution of the unilateral order. The aggrieved contractor was entitled to a trial de novo in the Tax Court.

The sole question for decision in such an appeal was the determination by the Tax Court of the correct amount of excessive profits. After the Tax Court redetermination, the Price Adjustment Board was required to further consider the matter and authorize and direct the Secretary of War to eliminate such excessive profits by collection, by suit, by withholding other amounts due the contractor, or by other feasible means. But there were other steps to be taken by the Adjustment Board relating to tax computations and adjustments before finally closing the matter.

The Renegotiation Act further provides that the Secretary shall allow the contractor credit for Federal income and excess profits taxes as provided in section 3806 of the Internal Revenue Code of 1939, as amended, 26 U.S.C.A. § 3806, upon the amount of excessive profits determined by him or by the Tax Court on appeal. Section 3806 provides that when excessive profits are eliminated the contract price shall retroactively be reduced by the amount of the excessive profits and that there shall be credited against the excessive profits eliminated the amount of the tax paid thereon. Provision is also made for the credit even though a *refund or credit of the tax,* as in the ordinary tax deficiency case, for the renegotiated year would otherwise be prevented by the statute of limitations.

We agree with defendant that in the circumstances and under the facts, the statute of limitation as it relates to tax cases generally is not involved in this case. The statutory scheme of the Renegotiation Act and section 3806 contemplate an effective elimination of excessive profits with adequate safeguards, including tax adjustments, for the contractor. The primary and underlying purpose of the statute is to require the contractor to repay the excessive profits made on his contract, but care was taken to see that the contractor was protected with respect to the taxes which he had paid thereon. That is what was done in the instant case through the adjustments which were made.

The weakness in plaintiff's position is in its failure to recognize that the determination of the Secretary or the Board is not final, if appealed to the Tax Court. Therefore any action taken on the determination of the Secretary or the Board is necessarily tentative and does not become final until after the Tax Court hears and finally determines the correct amount of excessive profits.

National Builders, Inc. v. Commissioner, 12 T.C. 852, 860. In the instant case the Secretary determined that the excessive profits were $400,000 and he eliminated this amount by crediting against it the sum of $320,000, representing the taxes paid thereon, and by offsetting the balance against sums otherwise due plaintiff. When this determination was appealed and the excessive profits were changed and reduced by the Tax Court to $255,000, a recomputation of the taxes was necessary in order to determine the correct amount refundable to plaintiff. If the excessive profits had not been paid or collected by credit or otherwise these tax adjustments were required to be made in any event in arriving at the amount to be repaid by or collected from the contractor. The Tax Court did not decide that plaintiff was entitled to recover $145,000. It merely determined $255,000 was the amount of the excessive profits. So far as appears the Tax Court never goes into the matter of the tax adjustments and credits. The Tax Court is not dealing with a tax problem. The correct tax credit automatically follows the Tax Court's redetermined profits just as the original tentative tax credit followed the tentative determination of the Secretary or the Board. If the contractor has already made a net renegotiation payment larger than the amount properly due the Government, it becomes entitled to a refund of the difference between the two. In this case this amount has been refunded to plaintiff. We find no language in either the Renegotiation Act or section 3806 of the Internal Revenue Code that requires or that would reasonably support any other construction. Nothing is said about a determination or adjustment of tax credits by the Tax Court to arrive at the net amount to be collected from or refundable to the contractor.

■ The adoption of plaintiff's contention that the statute of limitation prevents the complete determination of the correct amount of the excessive profits refundable to the contractor would be imputing to Congress the intention of depriving the Government of its just taxes because it provided that the Secretary or the Board could execute his or its tentative determination. We think that the statute of limitation would not be involved if the Secretary had not executed his determination but rather had waited until the Tax Court had redetermined the excessive profits and then computed the proper tax credit. In that event the contractor would at that time be required to repay the amount of the excessive profits, less the correct credit for the taxes previously paid thereon. The purpose of the provision allowing the Secretary or the Board to execute the determination in the first instance was to recoup the excessive profits as soon as possible, not to bar the Government from receiving its just taxes. We are, therefore, of the opinion that the plaintiff is not entitled to recover the $104,400.

■ The plaintiff further contends in the alternative that it is entitled to interest on the $11,600 refunded to it as a post-war refund credit. We think this contention is not well taken. Section 780(a), 26 U.S.C.A. Excess Profits Taxes provides that a taxpayer paying World War II excess profits taxes is entitled to a post-war credit equal to 10 percent of such taxes. Section 780(b) and (c) provide that if the taxes were paid prior to July 1, 1945, the credits should be made by issuing Government bonds to the taxpayer, which were to bear no interest. Section 781(c) provides that if the tax payments are made by way of an asserted deficiency in tax or otherwise after July 1, 1945, the post-war credit should be paid the taxpayer in cash. There is no provision for the payment of interest. House Report No. 849, 79th Cong., 1st Sess., 1945 C.B. 566, 572, specifically states: "Likewise, as under existing law, no interest is allowable for any period with respect to any payment made to a taxpayer under section 781 (c)." The plaintiff is not, therefore, entitled to interest on the $11,600.

The plaintiff is not entitled to recover. The defendant's motion for summary

judgment is granted and plaintiff's petition is dismissed.

It is so ordered.