**GENERAL DYNAMICS CORPORATION**
v.
**The UNITED STATES.**
No. 258–62.

United States Court of Claims.
Nov. 15, 1963.

Harry L. Brown, Washington, D. C., for plaintiff, Alvord & Alvord, Washington, D. C., on the brief.

Philip I. Brennan, Washington, D. C., with whom was Asst. Atty. Gen., Louis F. Oberdorfer, for defendant, Edward S. Smith, Lyle M. Turner, and Philip R. Miller, Washington, D. C., on the brief.

Before JONES, Chief Judge, and WHITAKER, LARAMORE, DURFEE and DAVIS, Judges.

LARAMORE, Judge.

This is an action for the recovery of interest on a refund of Federal unemployment tax made by defendant to plaintiff.

General Dynamics Corporation, hereinafter referred to as taxpayer, is a corporation organized and existing under the laws of Delaware. On April 30, 1954, Consolidated Vultee Aircraft Corporation, hereinafter referred to as Consolidated, was merged into taxpayer corporation. Since the merger took place prior to the expiration of the first 20 weeks in 1954, Consolidated did not qualify as an "employer" as such term is defined in section 1607(a) of the Internal Revenue Code of 1939, and thus was not liable for unemployment taxes for that year. However, Consolidated did qualify as an employer in the various states in which it had employees and was required to pay, and it did pay, into state unemployment compensation funds, a tax on wages paid for the period from January 1 to April 30, 1954.

In its annual Federal tax return of employers, Form 940, for the year 1954, taxpayer in the computation of taxable wages included all wages paid by it and Consolidated for that year and took a credit, subject to the 90 percent limita-

tion, for (a) all contributions paid by taxpayer and Consolidated to the various states on account of wages paid by such, and (b) the section 1601(b) "additional credits" attributable to each. Thus taxpayer reported total taxable wages paid during the calendar year in the amount of $155,905,048.52, showed a gross Federal tax of $4,677,151.46, claimed a credit for contributions paid into state funds plus the additional credit in the aggregate of $4,209,436.31, and reported a "net" tax in the amount of $467,715.15 which was duly paid.

Thereafter, upon examination of the aforementioned return, a deficiency was improperly asserted by the Internal Revenue Service on the basis that the wages paid by Consolidated should be eliminated from taxpayer's tax base and that the state unemployment insurance contributions paid by or for Consolidated, plus the "additional credit" attributable to it, were not properly allowable as a credit under section 1601 of the 1939 Internal Revenue Code.[1] On the basis of this erroneous determination on March 29, 1957, additional taxes in the amount of $1,-421,314.20, together with interest from the due date of the return, were assessed which taxes and interest in the amount of $398,763.01 or a total of $1,820,077.-21, were paid under protest by taxpayer on October 5 and November 5, 1959.

Thereafter, the Internal Revenue Service changed its position from that adopted in the determination and assessment of the tax deficiency in question. As a result, taxpayer filed its claim for refund in the amount of $1,820,077.21. Interest on the overassessment was also demanded. In accord with its changed position,

the Internal Revenue Service allowed the claim for the overassessment; however, no statutory interest was allowed with respect to the overpayment in question. It is this claim for statutory interest which is the subject matter of the petition before us.

■■■ Defendant contends that the taxpayer's right to avail itself of the general statutory interest provisions is barred by the specific provisions of section 6413(d) of the 1954 Internal Revenue Code and its predecessor provision, section 1601(d) of the Internal Revenue Code of 1939. We disagree.

At the outset, it should be pointed out that there is a conflict as to whether the provisions of the 1939 Code are applicable to the case at bar or whether they were supplanted by the 1954 revision. We need not decide this question. While it is true that the provision as expressed in section 6413(d) of the 1954 Code is couched in different language from that contained in section 1601(d) of the 1939 Code, infra, it is clear that no change in the law was intended. H.R.Rep.No.1337, 83d Cong., 2d Sess. A412 (1954); S.Rep. No. 1622, 83d Cong., 2d Sess. 582 (1954), U.S.Code Congressional and Administrative News 1954, p. 4025.[2] We cannot infer that any change in policy was intended by the change in language. Thus it becomes incumbent upon this court to examine the language and trace the legislative history of the original enactment to ascertain the congressional intent.[3]

Subsection (d) of section 1601 of the Internal Revenue Code of 1939 provides as follows:

"(d) *Refund or credit.* Refund or credit of the tax (including penal-

---

1. The basis for the Internal Revenue Service's erroneous position was that it considered that taxpayer and Consolidated for unemployment tax purposes for the calendar year 1954 did not constitute a single entity. The Internal Revenue Service recognized its error and formally changed its prior position as set forth in Rev.Rul. 62–60, Int.Rev.Bull. 1962–19.

2. These Congressional reports point out that section 6413 of the 1954 Code makes

only two changes from existing law. However, it is clear that such changes are not applicable to the instant situation.

3. See Castell v. United States, 14 F.Supp. 654, 658, 83 Ct.Cl. 222, 229 (1936), where this court stated that in determining the proper construction of a statute, the court must not only consider the language used but also the purpose of the act.

ty and interest collected with respect thereto, if any), based on any credit allowable under this section, may be made in accordance with the provisions of law applicable in the case of erroneous or illegal collection of the tax (including statutes of limitations). No interest shall be allowed or paid on the amount of any such credit or refund."

Section 6413(d) of the 1954 Code, the counterpart of section 1601(d), reads as follows:

"(d) *Refund or credit of federal unemployment tax.*—Any credit allowable under section 3302, to the extent not previously allowed, shall be considered an overpayment, but no interest shall be allowed or paid with respect to such overpayment."

If the prohibition against the allowance of interest of either these two sections is not applicable to the instant situation, then the taxpayer can resort to the general interest provisions [4] of the 1939 or 1954 Codes providing for six percent interest per annum for "all taxes erroneously or illegally assessed or collected."[5]

Section 1600 of the 1939 Code [6] imposes the tax here involved. Subsequent to the enactment of this section, Congress passed certain liberalizing provisions found in section 1601 of the 1939 Code [7] providing that in determining the tax imposed by section 1600, certain credits shall be allowed for contributions paid by the taxpayer into a state unemployment fund. At the same time Congress enacted what later became section 1601 (d), which section, the defendant contends, bars taxpayer's right to statutory interest on the refund.

Defendant's contention appears at first glance to have some merit since we must recognize the principle that general language of a statutory provision, although broad enough to include it, will not be held to apply to a matter specifically dealt with in another part of the same enactment.[8] Thus, defendant argues, that the general interest provisions are not applicable since a refund or credit on an overpayment of Federal unemployment tax is specifically covered by section 1601(d) of the 1939 Code or section 6413(d) of the 1954 Code. However, defendant's argument must fall when subjected to close scrutiny and tested against the clear congressional intent. In making its assertion, defendant fails to give consideration to the circumstances which gave rise to the refund in question and to envision the limited factual situation intended to be covered by the statutory enactment. Thus, the main fallacy in defendant's argument is that it fails to distinguish between a situation where the Federal unemployment tax paid was initially legally collected but became an overpayment by reason of subsequent events and that with which we are here confronted, involving in the first instance an erroneous and illegal collection by the Internal Revenue Service. There is no doubt, absent the specific section in question, taxpayer would be entitled to avail itself of the general statutory interest provisions since the overpayment of tax here represented "an erroneous or illegal collection." [9] Thus Congress, in enacting

4. It is evident that absent the specific section in question, taxpayer would be entitled to the benefit of the general interest provisions of sections 3770 and 3771 of the 1939 Code. See Int.Rev.Code of 1939, section 1610, and the cross-references made therein to sections 2700, 2711, 3770, and 3771.

5. Int.Rev.Code of 1939, section 3770(a) (1) (now Int.Rev.Code of 1954, section 6402), provides for the refunding of "taxes erroneously or illegally assessed" and Int.Rev.Code of 1939, section 3771 (now Int.Rev.Code of 1954, section 6611) di-

rects that interest on any overpayment shall be allowed at the rate of six percent per annum.

6. Now Int.Rev.Code of 1954, section 3301.

7. Now Int.Rev.Code of 1954, section 3302.

8. Bulova Watch Co., Inc. v. United States, 365 U.S. 753, 758, 81 S.Ct. 864, 6 L.Ed. 2d 72 (1961); Towsend v. Little, 109 U.S. 504, 512, 3 S.Ct. 357, 27 L.Ed. 1012 (1883).

9. Supra, footnote 4.

section 1601(d) of the 1939 Code and its successor section 6413(d) of the 1954 Code, either intended to deprive taxpayers of the benefits of the general statutory interest provisions when there was "an illegal or erroneous collection" of Federal unemployment tax or was concerned with a more limited situation where there was a refund of Federal unemployment tax, which had been legally collected in the first instance, but became an overpayment by reason of subsequent events.

██ We believe that Congress envisioned the latter situation and did not intend to limit the effect of the general interest provisions where there was "an illegal or erroneous" collection in the first instance. No other rational explanation can be given for the utilization of the phrase "in accordance with the provisions of law applicable in the case of erroneous or illegal collection of the tax" of section 1601(d) of the 1939 Code. If we look at the counterpart of section 1601(d) in the 1954 revision we reach the same result. There Congress uses the expression "to the extent not previously allowed". We interpret this as meaning to the extent not previously allowed *by law*. Defendant's interpretation would have us add "to the extent not previously erroneously or illegally allowed by the Commissioner." Such an interpretation could lead to extraordinary and absurd results since it could open the door to the arbitrary and capricious disallowance of credits properly claimed in the Federal unemployment tax return and the interest free use by the Government of the funds arising from the resulting deficiencies.[10] We are not suggesting that the Commissioner would ever employ such tactics. We are merely pointing out that such a situation could result. Thus, we believe

that Congress intended to limit the requirements of payment of interest by the Government to the situation where the taxpayer, at the time he filed his Federal unemployment tax return, was not entitled to take the credits offered by section 1601 of the 1939 Code and its successor section 3302 of the 1954 revision but later, either through payments into state unemployment funds or changes in the law, became entitled to take a credit for such payments.

The legislative history supports this conclusion. When the section in question finally became section 1601(d) of the 1939 Code, the Committee on Ways and Means referring to section 1601(a) (5) which became section 1601(d) by the Revenue Act of 1943, stated:

"Subdivision (5) provides for refund of any tax (including any penalties and interest) which has been collected *but* with respect to which credit *allowable* under this section *has not been taken*. The law (including statutes of limitations) applicable *in the case* of erroneous or illegal collection of tax will apply to *such* refunds. No interest will be paid on any such refund. H. R. Rep. No. 728, 76th Cong., 1st Sess. 64 (1943)".[11] [emphasis added.]

There is nothing in the legislative history of the statutory enactment in question which leads us to believe that Congress intended it to be applicable to the instant situation. The Committee report specifically refers to the situation where a "credit allowable under this section has not been taken." That is not the situation with which we are now confronted. Here, the *credit allowable* had been taken; however, the Commissioner of Internal Revenue erroneously and illegally did not allow it. The taxpayer at the time of the

10. In United States v. Dow, 357 U.S. 17, 78 S.Ct. 1039, 2 L.Ed.2d 1109 (1958), the Court was requested to interpret a statute in such a manner as would also permit "manipulation" by the Government. In ruling against such an interpretation, the Court stated, 357 U.S. at page 25, 78 S.Ct. at page 1046, 2 L.Ed.2d 1109: "We

cannot attribute to Congress the intention to promulgate a rule which would open the door to such obvious incongruities and undesirable possibilities."

11. See also H.R.Rep. No. 871, 78th Cong., 1st Sess. 73 (1943); S.Rep. No. 627, 78th Cong., 1st Sess. 96 (1943).

filing of its Federal unemployment tax return was entitled to the credit. Thus the refund in question could not have been "based on" any credit not previously allowed since, prior to filing of the Federal return, taxpayer had paid such sums into state unemployment funds and the statutory provisions allowed him to take such a credit. Cf. Fahnestock v. United States, 95 F.Supp. 232, 119 Ct. Cl. 41 (1951); J. P. Morgan & Co. v. United States, 145 F.Supp. 927, 136 Ct. Cl. 748 (1956); Morgan Guaranty Trust Co. v. United States, 149 Ct.Cl. 735, 277 F.2d 466 (1960).

Thus we must hold that as a matter of law section 1601(d) of the 1939 Code or its successor section 6413 (d) of the 1954 Code does not bar taxpayer's right to statutory interest on a refund of Federal unemployment tax resulting from an erroneous or illegal collection. To conclude otherwise would produce an absurd and harsh result which clearly would do violence to the intended purpose of the statute.

Plaintiff's motion for summary judgment is granted, and defendant's cross-motion is denied. Plaintiff is entitled to recover, and judgment will be entered to that effect. The amount of recovery will be determined under Rule 38(c) of the Rules of this court.

DAVIS, Judge (dissenting).

Though for me the result is not plain either way, I conclude that we should take Congress at its word when it provided without qualification, in Section 1601(d) of the 1939 Code,[1] that "[n]o interest shall be allowed or paid on the amount of any such credit or refund." 58 Stat. 78. The two sentences of this subsection form a specific provision dealing, I think, with all situations like that before us— any refund of federal tax directly connected with and attributable to a credit for the amounts paid (or creditable) to the states. This provision does not make any express distinction between a refund payable because of events occurring after the taxpayer filed its return and a refund owing because the Internal Revenue Service incorrectly applied the Code to the facts existing when the return was made. On its face the language is general and all-inclusive. Nor can I find such a distinction implied in the direction that refund is to be made "in accordance with" the Code provisions "applicable in the case of erroneous or illegal collection of the tax (including statutes of limitations)"; this seems no more than a customary shorthand reference to the normal body of adjective law used in processing all refund claims. Other implications from slight variations in phraseology also seem to be insignificant and denied by the language of the 1954 Code.[2] The precise words of this tax statute, in sum, cover plaintiff's case. I find it hard to restrict their reach without some compelling reason.

Unlike the court, I interpret the legislative history as tending to confirm what the unqualified words of Section 1601 (d) appear to say. The precursor of the subsection was adopted in 1938, it is true, in connection with the initial allowance of post-return payments of contributions to state funds. Plaintiff says that is the

---

1. Since I agree with the court that for the present problem the relevant provisions of the 1939 and 1954 Codes have the same meaning, I follow the court's lead and treat with the 1939 provisions.

2. The comparable provisions of the 1954 Code (which all agree has the same meaning) uses neither the words "based on" the credit for state contributions, nor "credit allowable," nor "in accordance with" the provisions of law for recovery of erroneous or illegal tax collections. It is incorrect, therefore, to draw refined

inferences from the use in the 1939 Code of this particular phraseology. The 1954 Code says that "any credit allowable under section 3302 [providing for the credit for state contributions], to the extent not previously allowed, shall be considered an overpayment, but no interest shall be allowed or paid with respect to such overpayment." The court believes that "to the extent not previously allowed" means "allowed by law," but I doubt that this is the import of the phrase since tax legislation generally uses "allowable" when it means "allowed by law."

only set of circumstances to which the provision still applies. But in 1939, when Congress amended and rearranged this portion of the social security tax legislation, it appeared to attach this same provision to *all* refunds based on the credit for state contributions; and in the Revenue Act of 1943, if one looks to its language and arrangement, the statute again seems to take the same position. The Committee Reports for the latter Act refer to Section 1601(d) as applying to "*all* claims for refund or credit of the Federal tax, based on any credit allowable under section 1601 [for contributions to state funds]." H. R. Rep. No. 871, 78th Cong., 1st Sess., p. 73 (1944 Cum.Bull. 901, 955); S. Rep. No. 627, 78th Cong., 1st Sess., p. 96 (1944 Cum. Bull. 973, 1043) (emphasis added). I see nothing in the history that persuades me that, despite Congress' apparent extension of the prohibition on interest to all refunds based on the credit for state payments, it still desired to confine that prohibition to refunds based on post-return contributions.[3]

What impels me to find the reality of Congress' intention in the appearance of its prose is the special nature of the tax credit for contribution to state funds. This credit has a social and governmental, not a revenue, purpose; it was designed to foster the establishment and utilization of state unemployment compensation programs by drastically reducing the federal unemployment tax if the employer participates in a state system. Congress could very well choose to treat such a special adjustment—given as a matter of legislative discretion for non-fiscal ends—differently from the ordinary revenue-producing tax. Especially since the whole federal unemployment tax system is geared to protect the less affluent members of our society, Congress could decide that the burden of administrative errors in the calculation of the credit (generally the major factor in the ultimate federal tax) should be borne by the employer rather than by the beneficiaries of the unemployment compensation program. The majority of the court fears that this would permit the Commissioner to embark on a project of arbitrarily disallowing proper claims for credit. Congress could well think, however, that this possibility was too remote to outweigh the need to cut down on the administrative expenses ultimately to be borne by the employee-participants.[4]

---

3. The Committees did refer, specifically, to the situation where an allowable credit had not been taken by the taxpayer. But this illustration is used in the same reports which also refer to "all" claims for refund and contain statements which must have been meant to apply to all refund claims based on the credit under Section 1601, not merely those instances in which an allowable credit had not been taken. See also footnote 2, supra.

4. In other contexts Congress has occasionally forbidden the payment of interest on refunds resulting from readjustments (even where the refund did not flow from retroactive legislation). See, e. g., American Radiator & Standard Sanitary Corp. v. United States, Ct.Cl., 1963, 318 F.2d 915 (cf. 56 Stat. 815); Albert & J. M. Anderson Mfg. Co. v. United States, 145 F.Supp. 195, 136 Ct.Cl. 553 (1956); Skinner v. United States, 8 F.Supp. 999 (S.D.Ohio, 1934).