# 518

**UNIVERSAL FILM EXCHANGES, INC.,**
Plaintiff,

v.

**UNITED STATES of America,**
Defendant (two cases).

United States District Court
S. D. New York.

April 23, 1964.

Adolph Schimel, New York City, for plaintiff, Gardner, Morrison & Rogers, Washington, D. C., of counsel, by Thomas J. Beddow, Meade C. Patrick, Washington, D. C.

Robert M. Morgenthau, U. S. Atty., Southern Dist. of New York for United States of America, Rober Arum, Asst. U. S. Atty., of counsel.

LEVET, District Judge.

The plaintiff-taxpayer, Universal Film Exchanges, Inc., seeks by these actions to recover the identical sum, $7,357.06, as interest allegedly due it on a payment of $16,230 made by the Commissioner on June 25, 1957, pursuant to Sections 780 and 781, Int.Rev.Code of 1939.[1]

The actions represent but separate theories to recover the identical sum. The first, 62 Civ. 3059, is based on the contention that on June 28, 1957 Universal paid a deficiency in excess profits tax and interest for its fiscal year ended October 31, 1944,[2] which was excessive to the extent of $7,357.06, for failing to take into account that sum as interest on a credit to it of $16,230. The second action, 63 Civ. 1814, seeks the identical sum but is premised on the theory that Universal's payment of its taxes for 1950 was an overpayment because of the Commissioner's erroneous application of an overassessment on Universal's tax for that year. In its brief the taxpayer concedes that the second action was simply a precautionary measure, and, after a subsequent clarification of the government's accounting, concedes that the first action is the appropriate one. The remainder of the opinion will proceed on the basis of that concession.

---

1. All future statutory references are to sections of the 1939 Internal Revenue Code, unless otherwise indicated.

2. Each fiscal year referred to in this opinion will be designated simply by the calendar year in which it ended.

Both the taxpayer and the government have moved for summary judgment. The facts are not disputed and the case is in all respects ripe for summary judgment.

## I.

On December 8, 1949, Universal filed an amended excess profits tax return for 1944 disclosing an additional deficiency in excess profits tax of $162,300[3] and claimed an additional "net post-war refund credit" of $16,230. The additional deficiency had been assessed the previous day and was considered paid by Universal's aggregate payment of $632,663 on December 7, 1949. At the time of the assessment, the Commissioner did not allow as an offset against the additional deficiency the $16,230 claimed increase in the net post-war refund credit. Taxpayer's application for relief under Section 722 for 1944 was determined on January 25, 1950.

On May 15, 1957, the exact additional excess profits tax deficiency was determined to be $167,008. A credit of $162,-300 was allowed against this deficiency. On June 25, 1957, a post-war refund credit of $16,230, attributable to the additional deficiency of $162,300 assessed and paid on December 7, 1949, was allowed and paid to Universal, without interest.

The taxpayer contends that the Commissioner should have allowed interest in the sum of $7,357.06 on the post-war refund credit from December 7, 1949, the date the additional deficiency of $162,300 was assessed and paid, to June 28, 1957, the date when Universal was finally credited with the amount.

## II.

There is little doubt that under Sections 780 and 781 the taxpayer is not entitled to interest on the overpayment attributable to the ten per cent "post war refund credit." As originally enacted, Section 780(a) provided a post-war refund credit of 10% of the excess profits tax imposed for each taxable year ending after December 31, 1941. Subsections (b) and (c) required taxpayers to pay their excess profits taxes in full without regard to the post-war refund credit and provided that taxpayers were to receive United States bonds in amount equal to the credit and went on to provide:

"Such bonds shall bear no interest, shall be nonnegotiable, and shall not be transferable by sale, exchange, assignment, pledge, hypothecation, or otherwise, on or before the date of cessation of hostilities in the present war * * *."

In the case of a deficiency in excess profits tax for any taxable year for which a credit was provided by Section 780(a), a post-war refund credit of 10% of the deficiency was available to the taxpayer for the purpose of acquiring non-interest bearing United States bonds.

These sections were made inapplicable to taxable years commencing after December 31, 1943 by Section 3 of the Tax Adjustment Act of 1945, 59 Stat. 519. That section substituted a new section, Section 784, which provided a 10% credit as a direct offset against the excess profits tax imposed. Although interest was payable under Section 784, Universal's fiscal year 1944 commenced on November 1, 1943, thus making Sections 780 and 781 applicable.

As far as pertinent to this case, Section 3 of the 1945 Act also amended Section 781(a) to provide that where a deficiency in excess profits tax is paid on or after July 1, 1945, bonds are not required to be issued with respect to the post-war refund credit. Section 781(c) was amended to provide that the amount was to be paid in cash.

The Report of the House Ways and Means Committee (H.R.Rep.No.849, 79th Cong. 1st Sess.), commenting on the amendment to Section 781(c), stated at page 10:

"The Commissioner of Internal Revenue may, if he deems it advis-

---

3. All amounts shown to the nearest dollar.

able, permit the taxpayer to offset against the payment of tax or deficiency the post-war credit attributable to such payment in lieu of requiring full payment of the tax or deficiency and returning the amount of the post war credit attributable to such payment to the taxpayer in cash.

"   *   *   *

"Likewise, as under existing law, no interest is allowable for any period with respect to any payment made to a taxpayer under section 781(c)."

The Regulations promulgated January 24, 1946, dealing with the post-war refund credit, expressly provided that no interest was to be allowed or paid upon any such payment. Treas.Reg. 112 § 35.-781–1(a).

■■ Quite obviously, in the face of these authorities, the Commissioner was within his rights in refusing to allow Universal on December 7, 1949 to offset the additional post-war credit of $16,230 against the additional deficiency assessed that day, especially when it is realized that Universal's 722 application for 1944 had at that time not been determined. Apparently the Commissioner did not deem it advisable on December 7, 1949 to do so. The Commissioner's refusal to allow interest on the payment of $16,230 on June 25, 1957 was in pursuance of the express mandate of the Treasury Regulations. See Albert & J. M. Anderson Manuf. Co. v. United States, 145 F.Supp. 195, 136 Ct.Cl. 553 (1956); California Vegetable Concentrates, Inc., 10 T.C. 1158 (1948).

Universal seems to have little quarrel with these authorities and virtually concedes that they support the Commissioner's action in these cases. The theory of the taxpayer's position is a "use of money" doctrine it claims was established by Manning v. Seeley Tube & Box Co., 338 U.S. 561, 70 S.Ct. 386, 94 L.Ed. 346 (1950) and United States v. Koppers Co., 348 U.S. 254, 75 S.Ct. 268, 99 L.Ed. 302

(1955). Briefly, the taxpayer disclaims any attempt to affirmatively seek interest from the government on the basis of these cases. Rather, it simply alleges, since it was required to pay interest to the government on the basis of these cases on deficiencies subsequently abated, it should be permitted to offset the interest allegedly due it on the post-war excess profits credit against the interest it was required to pay on the excess profits tax deficiency for the same years. Characterizing these decisions as based on the equitable "use of money" doctrine, it alleges that the government, invoking equity, should do equity and permit as an offset interest on the post-war credit.

The taxpayer's initial error is to characterize the Seeley Tube and Koppers cases as based on the equitable principle of "use of money." Both Seeley Tube and Koppers are known among tax savants as "potential deficiency" cases. Briefly, they held that where a deficiency is later abated by either a loss carryback (Seeley Tube) or the granting of Section 722 relief (Koppers), the deficiencies will nevertheless bear interest until extinguished or abated. In each the court reasoned that since Congress deemed the tax due at the time of the assessment, the government was entitled to the use of the funds until abatement and the taxpayer must compensate the government for the "use of the money." "[T]he taxpayer had a positive obligation to the United States: a duty to pay its tax. * * * For that period the taxpayer, by its failure to pay the taxes owed, had the use of funds which rightfully should have been in the possession of the United States." Seeley, supra, 338 U.S. at 565–566, 70 S.Ct. at 389. Each opinion extensively analyzes the statutory scheme and the applicable portions of the statute. To characterize these holdings as based on equitable doctrines is inaccurate. These opinions, while requiring interest to be paid to the government, can in no wise support the taxpayer's claim for interest.

Any discussion of the allowance of interest to Universal in this factual con-

text must begin with the citation of the "'traditional rule' that interest on claims against the United States cannot be recovered in the absence of an express provision to the contrary in the relevant statute or contract." United States v. Alcea Band of Tillamooks, 341 U.S. 48, 49, 71 S.Ct. 552, 95 L.Ed. 738 (1951). There is here no statute or contract permitting the granting of interest and no contrary result is dictated by either the Seeley Tube or Koppers case. The fact that the government is entitled to interest and the taxpayer is not is, of course, not determinative, for in this area what is sauce for the goose is not necessarily sauce for the gander. As Justice Brandeis observed in United States v. North American Transportation & Trading Co., 253 U.S. 330, 336, 40 S.Ct. 518, 521, 64 L.Ed. 935 (1920): "So rigorously is the rule applied that, in the adjustment of mutual claims between an individual and the government, the latter has been held entitled to interest on its credits although relieved from the payment of interest on the charges against it." See also Holmes, J., in Boston Sand & Gravel Co. v. United States, 278 U.S. 41, 49, 49 S.Ct. 52, 54, 73 L.Ed. 170 (1928).

The case of Industrial Rayon Corp. v. United States, 155 F.Supp. 556, 140 Ct. Cl. 168 (1957) fails in any way to support the taxpayer's contentions here. The court simply held that under the facts present there the taxpayer was entitled to hold interest-free the sum it deferred under Section 710(a) (5) even though the deficiencies were later stipulated to have been abated by a loss carryback rather than by a subsequently granted Section 722 application.

Universal is not entitled to interest on the payment by the Commissioner of its post-war excess profits credit. For the foregoing reasons, the defendant's motion for summary judgment is granted dismissing the complaint with costs and prejudice. The plaintiff's cross-motion for summary judgment is denied.

Settle separate judgments in each action on notice.