**GENERAL MOTORS CORPORATION,**
**Plaintiff,**

v.

**UNITED STATES of America,**
**Defendant.**

**Civ. A. No. 4-71986.**

United States District Court,
E. D. Michigan, S. D.

Feb. 14, 1975.

E. Alan Moorhouse, General Motors Corp., Detroit, Mich., for plaintiff.

Robert Greco, U.S. Dept. of Justice, Washington, D.C., Saul A. Green, Detroit, Mich., for defendant.

## MEMORANDUM OPINION AND ORDER

JOINER, District Judge.

Plaintiff General Motors Corporation (GM) brings this action to recover interest from the United States under section 6611(a) of the Internal Revenue Code of 1954, 26 U.S.C. § 6611(a), on certain amounts of federal excise tax erroneously assessed against, collected from, and later returned to GM. This court has jurisdiction under 28 U.S.C. § 1346(a). Both parties have moved for summary judgment and stipulated to the following facts.

In each of its Quarterly Federal Excise Tax Returns timely filed during the years 1961–63, GM claimed credits totaling $323,318.28, against the federal excise tax liabilities disclosed on its returns. GM claimed these credits under 26 U.S.C. § 6416(b) on the grounds that certain payments made by Frigidaire Division, an unincorporated division of GM, to its distributors for freight allowance claims to dealers constituted bona fide discounts, rebates, or allowances which readjusted the sales price of taxable articles such that GM could claim a proportionate credit of the federal excise tax previously paid with respect to such sales.

The Internal Revenue Service (IRS) audited GM's federal excise tax returns for the years 1961–63 and, on the theory that payments by Frigidaire Division were not bona fide discounts, rebates, or allowances, disallowed the credits. IRS then assessed $323,318.28 and $35,283.50, taxes and interest respectively, with regard to the disallowed credits, which amounts GM paid.

GM filed a timely refund claim for the tax and interest assessed. Upon learning that the refund claim was proposed to be denied, GM filed a timely protest and requested a District Conference. After this conference, the District Director informed GM that a refund was to be made in accordance with technical information received from the National Office concluding that the payments in controversy were bona fide discounts, rebates, or allowances. GM received a refund of the tax and interest assessed on September 13, 1968.

Although GM requested interest on the amount of interest and tax assessed, IRS has paid no interest for any portion of the assessment. GM now seeks by way of this action to recover statutory interest from August 14, 1964, the date GM was first advised by the revenue agent conducting the audit that he proposed to disallow the claimed credit and

the date GM paid at least a part of the erroneous assessment, to September 13, 1968, the date of refund.

The issue in this case results from an apparent conflict between two statutory provisions. Section 6611(a), the provision under which GM claims entitlement to interest, provides that: "Interest shall be allowed and paid upon any overpayment in respect of any internal revenue tax at the rate of 6 percent per annum." Yet, section 6416(b)(1), the provision under which GM claimed the excise tax credits and ultimately received a refund of the erroneous assessment, provides that: "credit or refund (without interest) shall be allowed or made in respect of overpayments . . . ."

GM contends that the "without interest" language of section 6416(b)(1) is limited to time periods prior to erroneous administrative action on a claimed credit or refund and that the general rule of section 6611 applies on the facts in this case. The government argues that the "without interest" language has no exception and, relying on familiar canons of statutory construction, asserts that the specific prohibition against recovery of interest in section 6416(b)(1) has priority over the general mandate of section 6611.

Whether the "without interest" language of section 6416(b) prevails over the general rule permitting recovery of interest on refunds under section 6611 (a) where the taxpayer claims erroneous administrative action was recently determined in a manner adverse to the government in Greyhound Corp. v. United States, 495 F.2d 863 (9th Cir. 1974). *Greyhound* involved the appropriateness of refunds of federal fuel excise taxes granted under 26 U.S.C. §§ 6416(b)(2) (H) & 6421(b) wherein the taxpayer claimed interest on a refund under section 6611(a).

Relying on General Dynamics Corp. v. United States, 324 F.2d 971 (Ct.Cl. 1963), the court concluded that the "without interest" language of both sections 6416(b) and 6421(b) had no application to refund claims which are erroneously rejected and that interest should be allowed from the date of rejection. 495 F.2d at 870–71. The court refused to distinguish between the allowance of interest where, as in *General Dynamics*, a tax was wrongfully collected in the first instance and allowance of interest where the government has wrongfully rejected a legitimate claim for refund: "To hold otherwise would encourage the Internal Revenue Service to postpone action on this type of claim, or reject it, knowing there would be nothing to lose." *Id.* at 871.[1]

In *General Dynamics, supra,* taxpayer claimed credits on its federal unemployment tax return for contributions paid to various state unemployment compensation funds. The Internal Revenue Service disallowed the credits and assessed additional taxes for the deficiency. Upon payment of the tax and protest by the taxpayer, IRS reversed its position, allowed the credits, and refunded the wrongfully assessed funds. Taxpayer sued for the interest on the withheld monies. The statutes under which the taxpayer sought recovery of the refund included "without interest" provisions. Nevertheless, the court, after an examination of the statutes in question and their legislative history, concluded that the "without interest" provisions did not bar taxpayer's right to statutory interest on a refund of tax resulting from an erroneous or illegal collection on the theory that the credits had been properly claimed in the first instance. 324 F.2d at 976.

The government would limit *General Dynamics* to its facts and argues that *Greyhound* is little more than an act of

---

1. The distinguishing features between *Greyhound* and the instant case are insubstantial. *Greyhound* involved a rejected refund claim where it was necessary to seek redress in court rather than, as here, a claim for credits which were disallowed and then redressed at the administrative level. The rationale of *Greyhound* is that the right to interest arises when the erroneous administrative action is taken. Moreover, section 6416(b) sanctions both claims for credits and refunds.

judicial legislation at odds with the clear language of section 6416(b). To support its theory of this case, the government looks to General Motors Corp., Frigidaire Div. v. United States, 292 F.2d 502 (Ct. Cl. 1961).

In *General Motors,* taxpayer sought recovery of interest on a judgment awarding a refund for overpayment of excise taxes under section 3443(a) of the Internal Revenue Code of 1939, the predecessor section to section 6416(b). The court, adopting the trial commissioner's opinion, denied taxpayer interest on the judgment on the ground that section 3443(c), which barred recovery of interest on claims or refunds under section 3443(a) was a special statutory provision relating solely to, and exclusively governing, interest on credits and refunds of manufacturer's excise taxes and hence prevailed, as regards the special subject of interest on such credits and refunds, over the general provisions of 28 U.S.C. § 2411(a).[2]

GM's claim for interest in this case is less ambitious than the claim advanced in *General Motors.* Had plaintiff prevailed in that action, interest would have been payable from the date of initial payment or collection without regard to whether the government had taken any affirmative erroneous action.[3] Here, on the other hand, GM claims interest only from the date of erroneous administra-

tive action, conceding that the "without interest" language of section 6416(b) covers the period of time from the initial payment of tax on the sales to which the claimed credits relate up to the time when credits are claimed, as well as the period from the time when credits were claimed to the time of the erroneous disallowance and assessment of additional tax.

■ The court finds that this limited claim for interest, on the facts of this case, comports with the language and legislative history of section 6416(b). The approach taken in *Greyhound* should have application here. Section 6416(b) provides that credit or refund without interest shall be allowed or made in respect of "overpayments". The subparagraph of the statute relating to price readjustments defines "overpayments" for purposes of this action by stating that "the part of the tax proportionate to the part of the price repaid or credited to the purchaser shall be deemed to be an overpayment." 26 U.S.C. § 6416(b)(1). Thus, "overpayment" means the taxes paid with respect to which a tax credit is claimed in the first instance rather than, as here, the amount paid the government because of an erroneous assessment based upon denial of credits which were properly taken.

The legislative history underlying section 6416(b), although less than comprehensive, also supports this view. Con-

2. The Commissioner's rationale was derived from Bulova Watch Co., Inc. v. United States, 365 U.S. 753, 81 S.Ct. 864, 6 L.Ed.2d 72 (1961). In *Bulova*, the Court sought to determine whether the date from which interest accrues on an overpayment of taxes attributable to an unused excess profits credit carry-back was governed by section 3771(e) of the Internal Revenue Code of 1939 or by 28 U.S.C. § 2411(a). The Court held that, in the light of the provisions of section 3771(e), governing carry-backs, and its clear legislative history, that section was a special statute relating solely to and exclusively governing tax refunds attributable to the carryback provisions of the internal revenue laws and hence prevailed with respect to that subject over the general provisions of section 2411(a). *Id.* at 761, 81 S.Ct. 864.
Subsequent cases agree that the rule which emerges from *Bulova* is that where you have a special statute governing a specific re-

fund which provides for the disallowance of interest on refunded sums, the special statute normally controls in the face of a general statute which provides for interest on tax overpayments. Greyhound Corp. v. United States, *supra* at 870; General Dynamics Corp. v. United States, *supra* at 974.

3. 28 U.S.C. § 2411(a) provides that on any judgment for any overpayment in respect of any internal revenue tax, interest shall be allowed from the date of the payment or collection thereof. Plaintiff in *General Motors* apparently did not consider the middle ground advanced here—that interest might be payable from the date of erroneous administrative action on a legitimate claim. The principal case taking this position, *Greyhound*, categorically rejected the contention that interest is payable from the date the tax was collected. Greyhound Corp. v. United States, *supra* at 870.

cerning section 621(c) of the Revenue Act of 1932, 47 Stat. 169, a predecessor of section 6416(b), the House Committee Report stated:

"Subsection (c) prohibits interest on credits or refunds, whether allowed or made administratively or pursuant to a judgment of a court. This is desirable to discourage delay in claiming credit or refund and to discourage litigation. Your committee sees no reason why the Government should pay 6 percent interest on amounts *taxpayers have erroneously paid in.*" (Emphasis added.) H.R.Rep. No. 708, 72d Cong., 1st Sess., 39, 1939-1 Cum. Bull. 457, 485.

A fair reading of the Committee Report discloses that Congress was chiefly concerned with denying interest on credits claimed for overpayments generated by action of the taxpayer, not payments made in response to an erroneous assessment.[4] As the Committee Report indicates, Congress sought to foreclose the possibility that taxpayers would delay a claim for credits in an attempt to maximize interest. The opposite danger is present here where, by virtue of an arbitrary or mistaken disallowance of a credit and subsequent assessment of tax, the government could enjoy interest-free use of a taxpayer's money for an indefinite period without incentive to take timely corrective action.

Permitting the taxpayer to fall back upon the general provisions of section 6611(a) to recover interest on funds wrongfully collected by the government after a legitimate claim for credit has been rejected is a rational accommodation of both the taxpayer's and the government's interests consistent with the language and purpose of section 6416(b). Such a course encourages timely action by both parties.

4. The House and Senate Reports on the Internal Revenue Code of 1954, Section 6416, state that " . . . under this section credit or refund shall be made without interest in any case *where the overpayment is caused by price readjustment.*" (Emphasis added.) H.Rep.No.1337, S.Rep., 83d Cong., 2d Sess., 1954 U.S.Code Cong. & Admin.News, 4560, 5232.

Accordingly, the court holds that the language of section 6416(b) does not apply to the credits which were erroneously rejected in this case and that interest on the assessment should be allowed under section 6611(a) from the date of the erroneous administrative rejection.

The final question in this case concerns the date from which the interest due GM should be computed. Since the thrust of the court's holding requires (1) payment of the tax and (2) an erroneous affirmative action on the part of the government amounting to a rejection of the refund before the interest is recoverable, the key date in determining the date from which interest should be computed is the latter of the two.

In this case the IRS agent conducting the audit of Frigidaire Division's excise tax liability informally advised GM, prior to August 14, 1964, that he proposed to disallow the credits claimed for the calendar years 1961-62. On August 14, 1964, GM delivered checks to defendant for the federal excise tax liabilities resulting from the disallowance of the credits claimed by GM's Frigidaire Division for the period from January 1, 1961 through December 31, 1962, totaling $202,516.09 for the 1961 and 1962 calendar years.

Sometime prior to September 28, 1964, the revenue agent conducting the audit of the Frigidaire Division's excise tax liability completed his audit for the 1963 calendar year and informally advised GM that he proposed to disallow the credits claimed for that calendar year. On April 15, 1965, GM delivered a check for the Frigidaire Division's excise tax liabilities resulting from the disallowance of the credits claimed by the Frigidaire Division for the 1963 calendar year, totaling $120,802.19.

This too is consistent with the view that Congress addressed the problem of overpayments caused by taxpayer action, i. e., excise tax payments which by virtue of price readjustments became "overpayments", rather than overpayments responsive to an erroneous assessment levied after credits had been properly taken and denied.

Clearly, the dates upon which the revenue agent advised GM that he proposed to disallow the credits claimed for the 1961 and 1962 calendar years (August 14, 1964) and 1963 calendar year (September 28, 1964) identify the time when the erroneous government administrative action occurred in this case. At that time GM was put on notice by the government of its tax liabilities. From that point forward payment of taxes and interest by GM was not simply a gratuitous act on its part but an act induced by the actions of the government. GM paid the proposed erroneous assessment for the calendar years 1961–62 on August 14, 1964, and that for the calendar year 1963 on April 15, 1965. Thus, interest on the erroneous assessment should be computed separately for the amounts wrongfully collected and the interest assessed thereon from the dates of payment until September 13, 1968, the date on which GM received a refund.

General Motors motion for summary judgment is granted and the defendant's cross-motion for summary judgment is denied. The parties will submit an appropriate computation of interest and a proposed judgment in accordance with this opinion.

So ordered.