950 F.Supp. 205 (1996)
STATE OF MICHIGAN, and its Michigan Education Trust, Plaintiffs,
v.
UNITED STATES of America, Defendant.
No. 5:95-cv-135.
United States District Court, W.D. Michigan, Southern Division.
December 23, 1996.
*206 John J. Collins, Jr., Miller, Canfield, Paddock & Stone, PLC, Bloomfield Hills, MI, Terrence P. Grady, Asst. Atty. General, Frank J. Kelley, Attorney General, Finance & Development Division, Lansing, MI, for plaintiffs.
John A. Lindquist, Trial Attorney, U.S. Department of Justice, Tax Division, Washington, DC, Donald J. Gavin, Litigation Counsel, U.S. Department of Justice, Tax Division, Washington, DC, for defendant.

OPINION ON CROSS-MOTIONS FOR SUMMARY JUDGMENT
HILLMAN, Senior District Judge.
Plaintiffs State of Michigan (the "State") and the Michigan Educational Trust ("MET") brought suit against defendant United States of America (the "government") to compel payment of interest on taxes that the United States Court of Appeals for the Sixth Circuit held to have been erroneously paid by MET. This matter is presently before the court on the parties' cross-motions for summary judgment.

I. BACKGROUND

This case comes before the court on stipulated facts.
The Michigan Educational Trust was signed into law on December 23, 1986, by an act of the same name. MET was created for the purpose of, inter alia, providing parents with a prepaid tuition plan for up to four years of college education. Prior to offering applications for advance tuition payment contracts, MET sought a ruling by the Internal Revenue Service ("IRS") that MET's accrued investment income would be exempt from federal income taxation. In a private letter ruling dated March 29, 1988, the IRS stated its view that MET was required to pay federal income tax upon the income earned during its administration of the program.
The first MET enrollment period began November 30, 1988, and MET filed a U.S. corporation income tax return for the fiscal year ending September 30, 1988. MET later filed an amended 1988 tax return on which it claimed that it had no tax liability and requested a refund equal to the tax liability it had previously reported. After waiting the six-month period during which the United States addresses such claims under section 6532(a)(1) of the Internal Revenue Code of 1986 (the "Code"), the State and MET brought suit in this Court against the United States in May of 1990, requesting a refund for fiscal year 1988. On July 28, 1992, summary judgment was granted to the government and plaintiffs' cross-motion for summary judgment was denied. State of Michigan v. United States, 802 F.Supp. 120 (W.D.Mich.1992). Plaintiffs timely appealed.
During the years in which this litigation continued on appeal, MET continued to file returns and pay taxes in accordance with the IRS's ruling. MET also filed an amended tax return each year stating that it had no tax liability and requesting a refund in full for that year's taxes paid.
On November 8, 1994, the Sixth Circuit Court of Appeals reversed, holding that MET was not subject to federal taxation. State of Michigan v. United States, 40 F.3d 817 (6th Cir.1994). No appeal was taken from this order. MET has now obtained a refund of all federal income taxes paid. The refunded amounts also included approximately $13.5 million in interest as computed by the I.R.S.
Neither party disputes the amount of the refund of taxes paid or MET's entitlement to interest on the taxes paid. Plaintiffs claim, however, that the IRS improperly computed *207 the amount of interest due on the refunded amounts. The IRS calculated this interest from the date on which MET was required to file its yearly return, December 15.[1] Plaintiffs claim this to be error, asserting that since MET made quarterly payments of estimated taxes each year in question, it is entitled to interest from the date on which the IRS received each of its estimated tax payments. A substantial amount hinges on this seemingly-technical dispute: plaintiffs calculated the interest being sought at $3.99 million as of March 1, 1996.

II. ANALYSIS

A. Summary Judgment Standard

A motion for summary judgment will be granted where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). As the facts of this case are undisputed, it may appropriately be resolved on summary judgment.

B. The Statutory Basis for MET's Entitlement to Interest

Plaintiffs' principal argument as to why MET is entitled to additional interest is that it is the "general rule" that interest on refunds of tax overpayments is computed from the date of the overpayment. To support its contention, plaintiffs rely chiefly on 28 U.S.C. § 2411, which provides as follows:
In any judgment of any court rendered (whether against the United States, a collector or deputy collector of internal revenue, a former collector or deputy collector, or the personal representative in case of death) for any overpayment in respect of any internal-revenue tax, interest shall be allowed at the overpayment rate established under section 6621 of the Internal Revenue Code of 1986 upon the amount of the overpayment, from the date of the payment or collection thereof to a date preceding the date of the refund check by not more than thirty days, such date to be determined by the Commissioner of Internal Revenue. The Commissioner is authorized to tender by check payment of any such judgment, with interest as herein provided, at any time after such judgment becomes final, whether or not a claim for such payment has been duly filed, and such tender shall stop the running of interest, whether or not such refund check is accepted by the judgment creditor.
(Emphasis added). Plaintiffs also note that Code section 6611, entitled "Interest on overpayments," directs that "interest shall be allowed and paid ... [i]n the case of a refund, from the date of the overpayment to a date (to be determined by the Secretary) preceding the date of the refund check by not more than 30 days ..." 26 U.S.C. § 6611(a)-(b)(2).
In further support of their claim, plaintiffs cite various regulatory materials. They point out that Treas.Reg. § 301.6611-1(a) directs that "interest shall be allowed on any overpayment of any tax ... from the date of overpayment of the tax." Plaintiffs also cite Rev.Proc. 60-17, 1960-2 C.B. 942, which provides that,
[u]nder the general rule, interest is paid on a tax overpayment for the time the government has the use of the taxpayer's money. Interest is collected, similarly, for the time the taxpayer has the use of the government's money. The underlying objective is to determine in a given situation whose money it is and for how long the other party had the use of it.
The government on the other hand contends that plaintiffs' claim is governed by Code sections 6611(d) and 6513(b)(2), and asserts that under these provisions MET has received all the interest to which it is entitled. The government argues that § 6611(d) properly controls plaintiffs' claim because this section pertains specifically to the "payment of estimated tax." 26 U.S.C. § 6611(d). This section directs that the date on which any such payments are deemed to have been paid is governed by § 6513. 26 U.S.C. *208 § 6611(d). Section 6513(b)(2), in turn, provides that
[a]ny amount paid as estimated income tax for any taxable year shall be deemed to have been paid on the last day prescribed for filing the return under section 6012 for such taxable year (determined without regard to any extension of time for filing such return).
26 U.S.C. § 6513(b)(2) (emphasis added). If applicable, then, these provisions provide that MET is only entitled to interest from December 15 of each year in question. This corresponds to the amount that the government has already paid to MET.
The State and MET advance several arguments as to why §§ 6611(d) and 6513(b)(2) are inapplicable to the particular circumstances of this claim. Plaintiffs' first argument is a textual one. Plaintiffs posit that subsection 6513(b)(2), by its very terms, cannot apply to an entity such as MET which is not subject to federal taxation. Plaintiffs point out that § 6513(b)(2) calculates the deemed payment date for estimated tax as "the last day prescribed for filing the return under section 6012 for such taxable year ..." 26 U.S.C. § 6513(b)(2) (emphasis added). Plaintiffs then assert that because MET was never legally required to file a "return under 6012," § 6513(b)(2) cannot apply to their claim. And if §§ 6611(d) and 6513(b)(2) do not apply, plaintiffs contend, their refund claim must therefore be subject to the general provisions of §§ 6611(a)-(b)(2) and 2411 regarding interest.
I am not persuaded that § 6513(b)(2)'s reference to "the last day prescribed for filing the return under § 6012," 26 U.S.C. § 6513(b)(2) (emphasis added), necessarily implies that the taxpayer in question must be obliged to file a return for this section to apply. While this language can be read as implying such a requirement, this is not the only interpretation. A more plausible reading is that this section's reference to § 6012 serves merely to identify the date on which estimated tax payments by any and all taxpayers are deemed to have been paid. Cf. Little People's School, Inc. v. United States, 842 F.2d 570, 574 (1st Cir.1988) (holding that interpreting Code section 6511(a)'s reference to "the taxpayer ... required to file a return" as a reference to "a generic taxpayer" was "an acceptable alternative reading").
A second, related argument plaintiffs advance is that a distinction between the language of §§ 6513(b)(2) and 6513(b)(3) creates the implication that § 6513(b)(2) applies only to taxpayers obliged to file under § 6012. Plaintiffs note that § 6513(b)(3), like § 6513(b)(2), establishes a deemed payment date for the relevant taxes by reference to "the last day prescribed for filing the return under section 6012 for the taxable year ..." 26 U.S.C. § 6513(b)(3). Section 6513(b)(3) goes on to provide, however, that "[f]or this purpose, any exemption granted under section 6012 from the requirement of filing a return shall be disregarded." Id. Section 6513(b)(2) lacks a comparable provision. Plaintiffs assert that the necessary implication raised by this difference is that § 6513(b)(2) is inapplicable where a taxpayer is not required to file under § 6012.
Such a textual distinction might well be found convincing evidence of legislative intent if employed in an action against a defendant other than the United States. However, I conclude that such inferential analysis cannot overcome the strong presumption against liability associated with the sovereign immunity of the United States. "As sovereign, the United States, in the absence of its consent, is immune from suit." Library of Congress v. Shaw, 478 U.S. 310, 315, 106 S.Ct. 2957, 2962, 92 L.Ed.2d 250 (1986). The doctrine of sovereign immunity holds that
in the absence of constitutional requirements, interest can be recovered against the United States only if express consent to such a recovery has been given by Congress ... [t]hus there can be no consent by implication or by use of ambiguous language. Nor can an intent on the part of the framers of a statute ... to permit the recovery of interest suffice where the intent is not translated into affirmative statutory ... terms. The consent necessary to waive the traditional immunity must be express, and it must be strictly construed. *209 United States v. New York Rayon Importing Co., 329 U.S. 654, 658-59, 67 S.Ct. 601, 604, 91 L.Ed. 577 (1947). Accordingly, even assuming strong evidence of Congressional intent that § 6513(b)(2) be inapplicable to a taxpayer exempt from filing under § 6012, such evidence alone cannot support plaintiffs' claim. Here, explicit statutory language to that effect is lacking. Consequently, this contention fails.
The State and MET next assert that, with respect to computation of interest on refunds, the United States Code distinguishes between refunds obtained administratively and those obtained by way of judgment. In plaintiffs' view, §§ 6611(d) and 6513(b)(2) pertain only to administrative refunds. Plaintiffs assert that MET, by contrast, obtained its refund as the result of a judgment. Plaintiffs note that § 2411 refers to "any judgment of any court rendered," and claim that § 2411 thus applies to their claim.
The parties differ as to whether MET actually obtained its refund as the result of the Sixth Circuit's judgment or through subsequent IRS administrative action, but resolution of this question is unnecessary. Mindful of the Supreme Court's analysis in Bulova Watch Co. v. United States, 365 U.S. 753, 81 S.Ct. 864, 6 L.Ed.2d 72 (1961), I view it as highly questionable whether the amount of a taxpayer's refund should depend on the forum in which it brought its refund claim.
In Bulova Watch Co., the Court considered which of two provisions of the United States Code regarding interest properly pertained to a tax refund claim. Plaintiff had obtained a judgment that it was entitled to a refund of previous tax payments due to an unused excess profits carry-back. In paying the refund, the IRS computed the interest due, according to section 3771(e) of the 1939 Code, from the date when the plaintiff filed its refund claim. Plaintiff objected to this calculation. It claimed that § 3771(e) was properly relevant only to IRS administrative actions and asserted that its claim was subject to 28 U.S.C. § 2411(a)'s general provision for interest on refunds obtained by way of judgments. On this basis, it sought interest from the earliest date on which its overpayment could have been determined.
In reviewing plaintiff's claim, the Court expressed skepticism as to whether
Congress has made the starting date of interest in such cases dependent upon the forum selected by the taxpayer. [Plaintiff's] argument would mean  in fact, it frankly proceeds on the theory  that a taxpayer, holding a refund claim attributable to an unused excess profits credit, could, by proceeding in a District Court or the Court of Claims, recover interest from the date when a claim for refund could have been filed, yet if he proceeded through the Tax Court he could not recover interest for any period prior to the actual filing of his claim, even though the Tax Court's final judgments (or orders) are subject to review by the United States Courts of Appeals and ultimately by this Court. In the light of the provisions of § 3771(e) and its legislative history, it is almost certain that Congress did not intend such an anomalous, nonuniform and discriminatory result.
Id. at 757, 81 S.Ct. at 867.
The identical concern is present here. Given a plausible alternate interpretation of the regulatory scheme, it is highly questionable whether the extent of MET's interest recovery should depend on plaintiffs' choice of forum. It is far more logically consistent to read § 2411's use of the term "overpayment" as incorporating by reference the use of that term in §§ 6611(d) and 6513(b)(2). This reading makes greater sense in the context of the United States Code as a whole, and ensures consistency of application regardless of what procedure is used to seek a refund of tax overpayments.
Because plaintiffs are unable to show that §§ 6611(d) and 6513(b)(2) are inapplicable to their claim, I conclude that the government's position is correct as a matter of statutory interpretation. Even if the nature of the "general rule" on overpayments is as plaintiffs claim, such general rules must give way where, as here, specific code provisions pertain to the issue in question. As the Supreme Court has observed, "it is familiar law that a specific statute controls over a general one ..." Bulova Watch Co., 365 U.S. at 758, 81 S.Ct. at 868.
*210 Plaintiffs cite to several decisions which they allege demonstrate that courts ignore specific code provisions barring interest on refunds where payments are compelled by erroneous IRS action. These cases do not help plaintiffs. General Dynamics Corp. v. United States, 324 F.2d 971 (Ct.Cl.1963), involves no principles of general application. That decision is premised upon close analysis of specific Code provisions which have no bearing on this matter. Greyhound Corp. v. United States, 495 F.2d 863 (9th Cir.1974), purports to follow General Dynamics, yet misstates the prior case as having reached its holding on general policy grounds rather than narrow statutory ones. Accordingly, because it is premised on a questionable legal basis, it is unpersuasive. General Motors Corp. v. United States, 389 F.Supp. 245 (E.D.Mich.1975), concerns a claim for refund of overpayment of excise taxes under § 6416(b). The court concluded that the definition of "overpayment" for purposes of that section did not apply to the circumstances of the plaintiff's claim, and it therefore allowed the taxpayer to fall back on the general provisions of § 6611(a). Id. at 249. Like General Dynamics, this case rests on specific Code provisions which have no applicability here.
Likewise, Gen.Couns.Mem. 39, 157 (April 11, 1983), also cited by plaintiffs, is inapplicable. The memorandum relates to specific Code provisions regarding the government's privilege to retain erroneous windfall tax payments interest-free if repaid within forty-five days of the windfall profit tax return or the taxpayer's income tax return. Because the taxpayer was required to file neither, and had not done so, the memorandum held that the forty-five day grace period was inapplicable and that the government was therefore required to pay interest on the taxpayer's refund. Significantly, the memorandum concluded that this interest would be calculated from the deemed payment date relevant to the particular tax at issue established by 26 U.S.C. § 4995(a)(4)(B), not the date of actual payment. Accordingly, none of the above authorities provide any basis for concluding that §§ 6611(d) and 6513(b)(2) are inapplicable to plaintiffs' claim.
Plaintiffs' final argument is that it is against public policy to allow the government the interest-free use of taxpayers' money while wrongfully in possession of it. This contention also fails in light of the doctrine of sovereign immunity. As noted previously, "[i]n the absence of express congressional consent to the award of interest separate from a general waiver of immunity to suit, the United States is immune from an interest award." Library of Congress v. Shaw, 478 U.S. 310, 314, 106 S.Ct. 2957, 2961, 92 L.Ed.2d 250 (1986). Accordingly, a taxpayer may only obtain interest on a refund of tax payments  even if erroneously collected by the IRS  where federal statute so permits. Because the statutory framework affords no basis for their claim, plaintiffs are not entitled to interest beyond that which the IRS has already paid. Plaintiffs' claim for relief lies with Congress, not this court.

III. CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment is hereby GRANTED, and plaintiffs' motion for summary judgment is DENIED.
NOTES
[1] MET, a corporation, filed on the basis of a fiscal year. MET's return was thus due on the 15th day of the third month following the close of its fiscal year. See 26 U.S.C. § 6072(b). During the period in question, MET's fiscal year ended September 30. Accordingly, MET's return was required to be filed on or before the following December 15.