BULOVA WATCH CO., INC., *v.* UNITED STATES.

No. 241. Argued March 27, 1961.—Decided April 17, 1961.

*Bernard Weiss* argued the cause and filed a brief for petitioner.

*Oscar H. Davis* argued the cause for the United States. On the briefs were former *Solicitor General Rankin, Solicitor General Cox, Assistant Attorney General Rice, Assistant Attorney General Oberdorfer, Acting Assistant Attorney General Heffron, Meyer Rothwacks* and *A. F. Prescott.*

MR. JUSTICE WHITTAKER delivered the opinion of the Court.

Petitioner recovered a judgment in the Court of Claims against the United States for an overpayment of its excess profits taxes for the fiscal year ended March 31, 1942, in the amount of $211,899.28, plus interest thereon "as provided by law." 143 Ct. Cl. 342, 163 F. Supp. 633. Of the principal sum of the judgment, $150,016.21 was attributable to an unused excess profits credit carry-back from the succeeding year ended March 31, 1943.

Acting in accordance with the provisions of § 3771 (e) of the Internal Revenue Code of 1939, the Commissioner computed and allowed statutory interest on the latter sum from June 14, 1945, the date on which petitioner filed its claim for refund, to April 25, 1959—30 days prior to issuance of the refund check—in the amount of $124,784.72. Thereafter, petitioner moved the Court of Claims for relief from the Commissioner's interpretation of the judgment, contending that interest should be computed, under the provisions of 28 U. S. C. § 2411 (a), from the earliest date the overpayment could have been determined (the end of the fiscal year subsequent to the year involved, i. e., March 31, 1943), rather than from the date it filed its claim for refund (June 14, 1945) as provided in § 3771 (e), and that it was thus entitled to the further sum of $51,252.69. The motion was denied, without opinion.

Because of the importance of the question involved to the proper administration of the internal revenue laws, and to settle a conflict between the lower federal courts upon the question,[1] we granted certiorari. 364 U. S. 861.

The question thus presented is whether the date from which interest accrues on an overpayment of taxes attributable to an unused excess profits credit carry-back is governed by § 3771 (e) [2] of the Internal Revenue Code of 1939, or by 28 U. S. C. § 2411 (a).[3]

---

[1] In *Carter* v. *Liquid Carbonic Pacific Corp.*, 97 F. 2d 1, the Court of Appeals for the Ninth Circuit reached a result contrary to that reached by the Court of Claims in this case.

[2] Internal Revenue Code of 1939:

"§ 3771. Interest on Overpayments.

"(a) *Rate.*—Interest shall be allowed and paid upon any overpayment in respect of any internal revenue tax at the rate of 6 per centum per annum.

"(b) *Period.*—Such interest shall be allowed and paid as follows:

"(1) *Credits.*—In the case of a credit . . . ."

Petitioner contends that, because refund of the tax was not awarded administratively but by the "judgment of [a] court," the date from which interest runs is governed by the provisions of § 2411 (a), and that it is thus entitled to interest from "the date of the payment" on the "overpayment" which, it argues, became ascertain-

"(2) *Refunds.*—In the case of a refund, from the date of the overpayment to a date preceding the date of the refund check by not more than thirty days . . . .

"(e) [as added by § 153 (d), Revenue Act of 1942, c. 619, 56 Stat. 798, 847] *Claims Based on Carry-Back of Loss or Credit.*—If the Commissioner determines that any part of an overpayment is attributable to the inclusion in computing the net operating loss deduction for the taxable year of any part of the net operating loss for a succeeding taxable year or to the inclusion in computing the unused excess profits credit adjustment for the taxable year of any part of the unused excess profits credit for a succeeding taxable year, no interest shall be allowed or paid with respect to such part of the overpayment for any period before the filing of a claim for credit or refund of such part of the overpayment or the filing of a petition with the Tax Court, whichever is earlier."

[3] 28 U. S. C.:

"§ 2411 [as amended by § 120, Act of May 24, 1949, c. 139, 63 Stat. 89, 106]. *Interest.*

"(a) In any judgment of any court rendered (whether against the United States, a collector or deputy collector of internal revenue, a former collector or deputy collector, or the personal representative in case of death) for any overpayment in respect of any internal-revenue tax, interest shall be allowed at the rate of 6 per centum per annum upon the amount of the overpayment, from the date of the payment or collection thereof to a date preceding the date of the refund check by not more than thirty days, such date to be determined by the Commissioner of Internal Revenue. The Commissioner is authorized to tender by check payment of any such judgment, with interest as herein provided, at any time after such judgment becomes final, whether or not a claim for such payment has been duly filed, and such tender shall stop the running of interest, whether or not such refund check is accepted by the judgment creditor."

able, and hence should be regarded as made, on March 31, 1943.[4] The Government, on the other hand, contends that § 3771 (e) is a special statute relating exclusively to tax refunds attributable to the carry-back provisions of the internal revenue laws, and hence prevails, as respects the special subject of carry-backs, over the general provisions of § 2411 (a). After a careful review of these and other statutes and their legislative history, we have concluded that the Government is right.

Section 3771 (e) of the 1939 Code deals specifically with the subject of interest on tax refunds attributable to the carry-back of a net operating loss or an unused excess profits tax credit, and is "an integral part of the carry-back provision[s]" of the internal revenue laws. *Manning* v. *Seeley Tube & Box Co.*, 338 U. S. 561, 568. It specifically says that "[i]f the Commissioner determines that any part of an overpayment is attributable to . . . [an] unused excess profits credit for a succeeding taxable year, no interest shall be allowed or paid with respect to such part of the overpayment for any period before the filing of a claim for credit or refund of such part of the overpayment or the filing of a petition with the Tax Court, whichever is earlier." The refund awarded here was solely "attributable to [an] unused excess profits credit for [the] succeeding taxable year." How, then, can petitioner be entitled to interest "for any period before the filing of a claim for credit or refund"?

---

[4] It will be noted that petitioner stops short of claiming that it is entitled to interest from the date it paid its 1942 excess profits tax. It claims, rather, that interest runs from the end of the succeeding tax year that gave rise to the carry-back (*i. e.*, March 31, 1943). The Government's position, on the other hand, is that the interest runs from June 14, 1945, the date on which the refund claim was first presented.

Petitioner agrees that if its award had been made administratively by the Commissioner or the Tax Court,[5] rather than by the "judgment" of the Court of Claims, interest would not be allowable on the refund for any period prior to the filing of its claim. But it argues that the language of § 2411 (a)—"In any judgment of any court rendered . . . for any overpayment in respect of any internal-revenue tax, interest shall be allowed . . . upon the amount of the overpayment, from the date of the payment or collection thereof" [6]—requires the allowance of interest "from the date of the payment or collection" of the tax when recovery is awarded by a District Court or, as here, by the Court of Claims. The effect of petitioner's contention thus is that Congress has made the starting date of interest in such cases dependent upon the forum selected by the taxpayer. Its argument would mean—in fact, it frankly proceeds on the theory—that a taxpayer, holding a refund claim attributable to an unused excess profits credit, could, by proceeding in a District Court or the Court of Claims, recover interest from the date when a claim for refund *could have been filed,* yet if he proceeded through the Tax Court he could not recover interest for any period prior to the actual filing of his claim, even though the Tax Court's final judgments (or orders) are subject to review by the United States Courts of Appeals and ultimately by this Court. In the light of the provisions of § 3771 (e) and its legislative history, it is almost certain that Congress did not intend such an anomalous, nonuniform and discriminatory result.

---

[5] Petitioner points to the fact that in *Lasky* v. *Commissioner,* 352 U. S. 1027, the Tax Court was held to be an administrative agency.

[6] Petitioner does not in fact claim interest from the date it actually paid its excess profits taxes for the year 1942 but, rather, from the end of the succeeding tax year that gave rise to the carryback, *i. e.,* March 31, 1943. See n. 4.

Petitioner further contends that § 2411 (a) is a later enactment than § 3771 (e) and, for that reason, should take precedence over it. We do not believe that § 2411 (a) can fairly be regarded as a later enactment than § 3771 (e), for at the time § 3771 (e) was enacted, in 1942, a predecessor provision of § 2411 (a) had long been on the books. Save for the word "hereby"—of no possible significance—that predecessor provision (§ 177 (b) of the Judicial Code, 28 U. S. C. (1940 ed.) § 284 (b)) was identical with the present § 2411 (a).[7] But even if petitioner were correct in concluding that § 2411 (a) is to be regarded as the later enactment, it would not necessarily take precedence over § 3711 (e), for it is familiar law that a specific statute controls over a general one "without regard to priority of enactment." *Townsend* v. *Little,* 109 U. S. 504, 512. See, *e. g., Ginsberg & Sons* v. *Popkin,* 285 U. S. 204, 208; *MacEvoy Co.* v. *United States,* 322 U. S. 102, 107; *Fourco Glass Co.* v. *Transmirra Corp.,* 353 U. S. 222, 228–229.

Section 3771 (e) specifically fixes the date from which interest shall run on carry-back refunds. It came into the law with the Revenue Act of 1942, which authorized carry-backs. A carry-back is an exceptional relief meas-

---

[7] The history of 28 U. S. C. § 2411 (a) and its predecessor provisions goes back to 1911. See § 177 (b) of the Judicial Code, enacted in 1911 (c. 231, 36 Stat. 1141), as amended by the Revenue Act of 1921 (c. 136, 42 Stat. 227, § 1324 (b)), as further amended by the Revenue Act of 1926 (c. 27, 44 Stat. 9, § 1117). Further amendments occurred in 1928 (45 Stat. 791, § 615) and in 1936 (49 Stat. 1648, § 808). The 1948 codification omitted from the Judicial Code all reference to interest on tax overpayments, but, by a correction Act in 1949 (c. 139, 63 Stat. 89, § 120), Congress restored the section to the Judicial Code as § 2411 (a). The only difference between § 177 (b) as it stood in 1942, and § 2411 (a) as it stands today, is that the word "hereby" no longer appears. Thus, § 3771 (e) is not only the specific enactment designed to control the subject of interest in carry-back cases, but it is also a later enactment than § 2411 (a).

ure in that it permits a departure from the basic annual accounting rule. The carry-back provisions "were enacted to ameliorate the unduly drastic consequences of taxing income strictly on an annual basis. They were designed to permit a taxpayer to set off its lean years against its lush years, and to strike something like an average taxable income computed over a period longer than one year." *Libson Shops, Inc.,* v. *Koehler,* 353 U. S. 382, 386.

The significant feature of a carry-back is that it permits an adjustment of an earlier liability upon the basis of subsequent events. It contemplates that the initial tax obligation was not incorrectly or mistakenly imposed but was actually due, but that an adjustment may be made upon the basis of the taxpayer's gain or loss in the succeeding year or years, and it is evident from the very terms of § 3771 (e) that Congress thought it would be unfair to the Government to require it to pay interest on a claim brought about by such a retroactive adjustment prior to the time when the taxpayer took affirmative steps to bring home to the Commissioner that he is now in position to claim, and claims, a readjustment of his past admittedly correct tax liability. Section 3771 (e) does not, of course, deny interest on carry-back refunds. It only prohibits the accrual of interest prior to the time the taxpayer's claim therefor is filed with, and thus made known to, the Commissioner.

The report of the Senate Finance Committee on the bill that became § 3771 (e) clearly discloses that these were Congress' purposes in adopting the section. It said:

"A taxpayer entitled to a carry-back of a net operating loss or an unused excess profits credit (see sec. 204 of the bill) will not be able to determine the deduction on account of such carry-back until the close of the future taxable year in which he sustains the net operating loss or has the unused excess

profits credit. He must therefore file his return and pay his tax without regard to such deduction, and must file a claim for refund at the close of the succeeding taxable year when he is able to determine the amount of such carry-back. Inasmuch as any overpayment resulting from the deduction of such carry-back does not occur, as a practical matter, until the net operating loss or the unused excess profits credit for the future taxable year is determined, and inasmuch as it is desirable to insure promptness in the filing of claims to inform the Commissioner that such deductions have been determined, this section provides *that no interest will be allowed with respect to any such overpayment for any period before the claim therefor is filed,* or a petition asserting such overpayment is filed with the Board of Tax Appeals, whichever is earlier." [8]   (Emphasis added.)

This surely shows Congress' purpose to deny interest on carry-back refunds for any period prior to the time they could be determined, and also to prevent, through delay in the presentation of claims, the accumulation of interest after that date and prior to the filing of the claim.[9]

In providing, in § 6611 (f) of the 1954 Internal Revenue Code, that overpayments resulting from the carry-back of net operating losses "shall be deemed not to have been made prior to the close of the taxable year in which such net operating loss arises," Congress recognized that

---

[8] S. Rep. No. 1631, 77th Cong., 2d Sess., pp. 123–124.

[9] That Congress did not propose to allow interest for any period prior to presentment of the claim is further confirmed by the provisions of § 6 of the Tax Adjustment Act of 1945, c. 340, 59 Stat. 517, amending § 3771 (e). Section 4 of that Act added a new section to the Internal Revenue Code, § 3780, providing for tentative carry-back adjustments. The concurrent amendment of § 3771 (e) specifies that interest shall not start to run prior to the date application is made for the tentative carry-back adjustments.

it was making a change from existing law. The relevant Committee Report [10] makes this clear. It said, in pertinent part, that:

> "Existing law denies interest on an overpayment caused by a carry-back for any period prior to the filing of a claim for credit or refund of such amount (or filing a petition with the Tax Court with respect to such amount). Under this [proposed] section, interest is denied only for the period prior to the close of the taxable year in which the net operating loss arises. This is consistent with the rule for interest on underpayments (see the discussion of sec. 6601)." [11]

In the light of the provisions of § 3771 (e) and its clear legislative history, we think it is a special statute relating solely to, and exclusively governing, tax refunds attributable to the carry-back provisions of the internal revenue laws, and hence prevails, as respects the special subject of carry-backs, over the general provisions of § 2411 (a). The judgment of the Court of Claims was therefore correct and must be

*Affirmed.*

MR. JUSTICE DOUGLAS dissents.

---

[10] H. R. Rep. No. 1337, 83d Cong., 2d Sess., p. A418.

[11] Section 6601 (e) provides that if the amount of tax is reduced by a carry-back loss, the reduction shall not affect the interest payable thereon by the taxpayer for the period ending with the close of the year in which the loss arises. Section 292 (c) of the 1939 Code (added by § 6 of the Tax Adjustment Act of 1945, c. 340, 59 Stat. 517) provided: "If any part of a deficiency is determined by the Commissioner to be attributable . . . to a carry-back to which an overpayment described in section 3771 (e) . . . in any other tax is attributable . . . no interest shall be assessed or paid under subsection (a) [providing that interest is payable on a deficiency from the date prescribed for the payment of the tax] with respect to such part of the deficiency for any period during which interest was not allowed with respect to such overpayment . . . ."