**W. W. CARUTH, Jr., and First National Bank in Dallas, Trustees, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. No. CA 3–6658–C.**

United States District Court, N. D. Texas, Dallas Division.

April 12, 1976.

---

Vester T. Hughes, Jr., William D. Jordan, Sam J. Dealey, Jackson, Walker, Winstead, Cantwell & Miller, Dallas, Tex., for plaintiffs.

Michael P. Carnes, U. S. Atty., Martha Joe Stroud, Asst. U. S. Atty., William W. Guild, Atty.-in-Charge Dept. of Justice, Dallas, Tex., Fred W. Schwendimann, III, Tax Div., Dept. of Justice, Gilbert E. Andrews, Trial Atty., Tax Div., Dept. of Justice, Washington, D. C., for defendant.

## OPINION

WILLIAM M. TAYLOR, Jr., Chief Judge.

This case is presented on Plaintiffs' Motion for Summary Judgment and is an action to recover income taxes paid in the years 1968 through 1971. Plaintiffs are trustees of six trusts created in 1952 for the benefit of six grandchildren of Mrs. W. W. Caruth and sue on behalf of each trust. The facts and questions of law presented are identical for each trust and arise from the sale of land owned in one-sixth undivided interests by the six trusts. Upon the following analysis I grant the Motion for Summary Judgment.

### THE FACTUAL BACKGROUND

There is no dispute concerning the facts of this case. In 1967, the six trusts contracted with Lincoln Property Company XIX, Ltd. (hereinafter "LPC"), a Texas limited partnership, as purchaser for the sale of acreage in the vicinity of Greenville Avenue and Lovers Lane in the City of Dallas. LPC's general partners are Trammell Crow and Mack Pogue; the six trusts are limited partners. Under the contract of sale, acreage is sold at a gross sales price of $43,560 per acre (a dollar per square foot). The sale price is paid $20,000 per acre in cash and $23,560 per acre in non-interest bearing notes. This case concerns the proper tax treatment of the sales involving these notes.

The notes are executed by LPC and are payable sixteen years after date. The first note, issued May 7, 1968, is payable

"without interest . . . on or before May 7, 1984, provided, however, that the principal sum of this note

shall be reduced in an amount equal to each distribution by the aforesaid Limited Partnership to the original Limited Partners, their successors and assigns, of net cash flow (as that term is defined in the Agreement of August 28, 1967, creating the aforesaid Limited Partnership), which the said original Limited Partners, their successors and assigns, are entitled to receive under the aforesaid Agreement creating said Limited Partnership."

All notes contain the same language which is specified in the Contract of Sale.

Pursuant to the Contract of Sale the six trusts in 1968 sold 33.151 acres of land to LPC at a gross sales price of $43,560 per acre (a dollar per square foot). The six trusts received $20,000 cash per acre and four notes in the amount of $23,560 per acre sold. Thus the six trusts received $663,020 cash and $781,037.56 in notes.

According to paragraph II(f)(2)(ii) of the contract of sale, "net cash flow" from LPC to the six trusts as limited partners is to be credited to the earliest outstanding note if more than one note is outstanding when a distribution of net cash flow is made. Distributions occurred in 1970, 1971, 1972 and 1973 and were credited as the following table indicates:

|  | Note One May 7, 1968 | Note Two May 27, 1968 | Note Three Sept. 18, 1968 | Note Four Sept. 23, 1968 |
|---|---|---|---|---|
|  | $147,674.08 | $198,516.56 | $229,686.44 | $205,160.48 |
| May 1, 1970: | 22,203.61 |  |  |  |
| April 23, 1971: | 66,414.37 |  |  |  |
| April 27, 1972: | 59,056.10 | 43,467.36 |  |  |
| April 20, 1973: |  | 116,473.09 |  |  |

Thus Note One has been paid off by reason of distributions in 1970, 1971 and 1972 and Note Two has a remaining balance of $38,576.11. To date sixteen notes have been issued for a total of $3,236,563.75 and distributions totalling $307,614.53 have been received. There were no distributions of "net cash flow" from LPC in 1974 or 1975.

## QUESTIONS OF LAW PRESENTED

■ The first question of law presented concerns proper tax treatment in the year of sale. Gain from the sale of property is the excess of the "amount realized" over the taxpayer's adjusted basis in the property. Section 1001(b) establishes a general rule that the "amount realized" shall be "the sum of any money received plus the fair market value of the property (other than money) received." Plaintiffs contend that the amount realized by them for tax purposes in the year of sale is the cash they received plus the present value of the non-interest-bearing notes as determined under section 483 of the Code. Defendant contends that the amount realized by Plaintiffs is the cash they received plus the fair market value of the notes determined without regard to the present value tables of section 483. The issue presented is whether "present value" of non-interest bearing notes calculated in accordance with section 483 is to be treated as a "fair market value" for purposes of determining "amount realized" under section 1001. If the amount realized is determined in accordance with the tables of section 483, there is no fact issue; if the amount realized is fair market value determined without regard to section 483, there is a fact issue. I have determined that "present value" calculated in accordance with section 483 is intended to determine "amount realized" under section 1001(b).

This issue has not been presented for judicial determination before. I therefore base my analysis on construction of

the Code and the income tax regulations promulgated pursuant to the Code.

Section 483 provides for the imputation of interest in notes which bear no interest or a very low rate of interest. If payments are deferred into the future, section 483 requires that a portion of each such payment be treated as interest. This section was enacted as part of the Revenue Act of 1964 to prevent a seller from converting ordinary income into capital gain by lowering or abolishing interest and increasing the principal amount of the note. H.Rep.Rpt.No.749 (88th Cong.1st Sess. 1963), 1964–1 (Pt. 2) Cum.Bull. 125, 196–198; Sen.Rpt. 830 (88th Cong.2d Sess. 1964), 1964–1 (Pt. 2) Cum.Bull. 502, 605–608, U.S.Code Cong. & Admin.News 1964, p. 1313. The operation of section 483 is based on the discount of notes to a present value from their face amount by use of tables of present value promulgated by the Treasury Department. These tables appear in Income Tax Regs. section 1.483–1(g) and their use is mandatory.

Section 483(b) states that "the present value of a payment shall be determined . . . by discounting such payment at the rate, and in the manner, provided in regulations prescribed by the Secretary . . . ." Examples (1) through (4) of Reg. section 1.483–1(f)(5) treat the present value as determined under the section 483 tables as the amount realized for purposes of determining gain or loss. Those examples are predicated upon a contract providing for three payments of $2,000 each. No interest was provided in the contract. The example (1) then states:

> After applying section 483, total unstated interest is determined to be $559.88, and the amount of each $2,000 payment which is treated as interest is determined to be $186.63. For the year 1963, A includes $1,440.12 ($5,440.12 ($6,000 value of B's obligation minus $559.88 total unstated interest) minus $4,000 adjusted basis) as long-term capital gain on the sale of the property.

Two points may be observed in this example. First, even though B's obligation bore no interest, its value was taken as face amount $6,000. Second, the amount realized on the sale, $5,440.12, was determined by applying the section 483 table to the face amount of the obligation to arrive at a present value of $5,440.12. Present value under section 483 was treated as the amount realized under section 1001.

The only circumstance in which the regulations under section 483 do not treat present value as the amount realized is the limited case in which present value could not be ascertained because there was no face amount to which the discount tables could be applied. These examples appear in Reg. section 1.483–1(e)(3). Examples (3) and (4) best show this circumstance. The contract obligation had no fixed face amount to which the present value tables could be applied, so fair market value of the obligation was ascertained.

There is no example in the section 483 regulations in which an obligation with a face amount was valued independently of the present value tables in those regulations.

The regulations under section 483 are "legislative" as opposed to "interpretative" regulations because the Treasury is specifically authorized and required to promulgate them. They are, therefore, entitled to respect; and I do not find them contrary to the statutory scheme or unreasonable and arbitrary. The position urged by the defendant is contrary to the Treasury regulations and cannot be sustained.

A construction of the two sections, which treats present value under section 483 as part of the amount realized under section 1001(b), not only agrees with the examples of the regulation, but also accords with the "old and familiar rule that 'where, there is, in the same statute, a particular enactment, and also a general one, which, in its most comprehensive sense, would include what is embraced in the former, the particular en-

actment must be operative, and the general enactment must be taken to affect only such cases within its general language as are not within the provisions of the particular enactment.'" *United States v. Chase,* 135 U.S. 255, 260, 10 S.Ct. 756, 757, 34 L.Ed. 117 (1890); *Bulova Watch Co., Inc. v. U. S.,* 365 U.S. 753, 758, 81 S.Ct. 864, 867, 6 L.Ed.2d 72, 75 (1961).

Finally, in those cases to which section 483 applies, I believe that using present value determined under section 483 to determine "amount realized" under section 1001(b) is the more practical and reasonable construction which effectively integrates the two sections of the statute. Calculations of present value and imputed interest under section 483 are not used exclusively for section 483 purposes. In determining both selling price and total contract price under the installment sale provisions of section 453, unstated interest is excluded and only present value is considered as a part of selling price and total contract price. Income Tax Regs. section 1.453–1(b)(2).

I find Defendant's citation of *Warren Jones Company v. Comm'r.,* 524 F.2d 788 (9th Cir. 1975) to be inappropriate. Section 483 of the Code was not involved in *Warren Jones.* The issue presented to the Court of Appeals was whether the sale should be treated as an "open" or a "closed" transaction. The Ninth Circuit simply held that the contract obligation involved, although not a "cash equivalent," was "other property" which had an ascertainable fair market value. *Warren Jones* only establishes what is clearly understood in the Fifth Circuit— that there is no open transaction if fair market value of the notes received can be ascertained. *Dennis v. Comm'r.,* 473 F.2d 274 (5th Cir. 1973). The question of whether the transaction is open or closed is not presented here.

In light of the examples of Regulations section 1.483–1(f)(5) which treat present value as amount realized and with regard to the other considerations above, I hold that present value for section 483 purposes should be considered to be the fair market value of the notes for purposes of determining the amount realized under section 1001(b).

■ The second question of law presented is whether, in years after the year of sale, payments should be accounted for under the provisions of Code section 483(e) and Regulations section 1.483–1(f) or under the provisions of Code section 483(d) and Regulations section 1.483–1(e). Section 483(e) deals with a "Change in Terms of Contract", and section 483(d) concerns "Payments that are indefinite as to time, liability, or amount."

These notes are due sixteen years after issuance but may be prepaid by cash flow from the LPC XIX partnership. Plaintiffs contend that, under Reg. section 1.483–1(f), this prepayment feature is treated as a change in the terms of the contract. Defendant contends that the prepayment feature makes the payments indefinite as to time, liability, or amount. I conclude that the notes given in the present case are not indefinite as to time, liability, or amount under the defendant's own regulations or under the usual rules relating to bills and notes.

The defendant's own regulations clearly treat prepayment as a "change in the terms of the contract" under Reg. section 1.483–1(f)(1) rather than as a factor which would make a note "indefinite" for purposes of Reg. section 1.483–1(e):

> "In general, a late payment or an early payment (including a prepayment) is considered a change in the due date of such payment to the date on which the payment is actually made, and therefore is considered a change in the terms of the contract."

Defendant's contention that the notes are "indefinite as to time, liability or amount" under Reg. section 1.483–1(e) is without merit. First, there is no question concerning liability for the notes. The notes are liabilities of Lincoln Property Company XIX, Ltd., a Texas limited partnership with substantial general partners.

Second, the amount of each note is clearly stated and no principal sum greater or lesser is payable.

Third, there is no question when the notes are to be paid. They are due sixteen years after issuance. That is a definite time. They may be prepaid if there is cash flow from the LPC XIX partnership. Under the ordinary rules of bills and notes as expressed in Texas case law and as codified by Chapter Three of the Texas Business and Commerce Code, the prepayment provisions of the notes under consideration in this case do not make the notes "indefinite." Section 3.104(a) of the Texas Business and Commerce Code provides:

(a) Any writing to be a negotiable instrument within this chapter must

(1) be signed by the maker or drawer: and

(2) contain an unconditional promise or order to pay a sum certain in money . . . and

(3) be payable on demand or at a definite time; and

(4) be payable to order or to bearer.

Section 3.109 defines a "Definite Time."

(a) An instrument is payable at a definite time if by its terms it is payable

(1) on or before a stated date or at a fixed period after a stated date; or

(2) at a fixed period after sight; or

(3) At a definite time subject to any acceleration; or

(4) at a definite time subject to extension at the option of the holder, or to extension to a further definite time at the option of the maker or acceptor or automatically upon or after a specified act or event.

Thus the law is well-settled that if a definite time for payment is specified, provision for prepayment does not make the time for payment any less definite.

This view is supported by the Uniform Commercial Code Comments accompanying the Code:

"4. Paragraph (c) of subsection (1) resolves a conflict in the decisions on the negotiability of instruments containing acceleration clauses as to the meaning and effect of 'on or before a fixed or determinable future time' in the original Section 4(2). (Instruments expressly stated to be payable 'on or before' a given date are dealt with in subsection (1)(a).). So far as certainty of time of payment is concerned a note payable at a definite time but subject to acceleration is no less certain than a note payable on demand, whose negotiability never has been questioned. It is in fact more certain, since it at least states a definite time beyond which the instrument cannot run. Objections to the acceleration clause must be based rather on the possibility of abuse by the holder, which has nothing to do with negotiability and is not limited to negotiable instruments. That problem is now covered by Section 1–208.

"Subsection (1)(c) is intended to mean that the certainty of time of payment or the negotiability of the instrument is not affected by any acceleration clause, whether acceleration be at the option of the maker or the holder, or automatic upon the occurrence of some event, and whether it be conditional or unrestricted. If the acceleration term itself is uncertain it may fail on ordinary contract principles, but the instrument then remains negotiable and is payable at the definite time."

Thus under both the defendant's own regulations and under the uniform state law, the notes under consideration are definite as to time, amount and liability.

\* Signed & Ordered this the 12th day of April, 1976.