**GERSH & DANIELSON, a Colorado law partnership, Plaintiff,**

v.

**U.S. ENVIRONMENTAL PROTECTION AGENCY, Defendant.**

No. 94–C–1575.

United States District Court, D. Colorado.

Dec. 15, 1994.

Luke Danielson, Boulder, CO, for plaintiff.

Steve Taylor, Asst. U.S. Atty., for defendant.

## MEMORANDUM OPINION AND ORDER

CARRIGAN, District Judge.

Plaintiff Gersh & Danielson, a Colorado law partnership, commenced this action against the Environmental Protection Agency (EPA), asserting violations of the Freedom of Information Act (FOIA). The parties have filed cross motions for summary judgment pursuant to Fed.R.Civ.P. 56. The issues have been fully briefed and oral argument would not be helpful. Jurisdiction is founded upon 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331.

## I. BACKGROUND.

In January 1994, EPA was seeking this court's approval for a proposed consent decree to settle *United States v. Telluride Co.*, 849 F.Supp. 1400 (D.Colo.1994), a civil lawsuit alleging Clean Water Act violations. The penalty to be imposed under the proposed consent decree was $143,000. Plaintiff submitted comments pursuant to 28 C.F.R.

§ 50.7, expressing concern that the proposed penalty was too lenient.

On January 13, 1994, the plaintiff sent a letter to EPA requesting:

> [a]ny studies in the possession of the [EPA] designed in whole or in part to compute the economic benefits that accrued to the Telluride Co. as a result of violations alleged in the case of *U.S. v. The Telluride Co., et al.,* pending in the U.S. District Court for the District of Colorado.[1]

EPA responded that it had two such studies in its possession, but that they were exempt from FOIA under 5 U.S.C. § 552(b)(4) and (b)(7). Plaintiff administratively appealed that determination, to no avail. Thus, on July 1, 1994, it commenced the instant action.

## II. *ANALYSIS.*

■ In a FOIA case, the district court reviews *de novo* an agency's decision to withhold documents pursuant to a FOIA exemption. 5 U.S.C. § 552(a)(4)(B). The district court must determine as to each withheld document whether it is shielded by the claimed exemption. *Anderson v. Department of Health & Human Servs.,* 907 F.2d 936, 941 (10th Cir.1990). Summary judgment is proper when the moving party demonstrates that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The party opposing a properly supported summary judgment motion may not rest upon mere allegations of the complaint, but must set forth evidence of specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–49, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986). A factual dispute is material only if, under governing law, its resolution might affect the action's outcome. A factual dispute is genuine only if a reasonable fact finder could return a verdict for the nonmoving party. *Id.*

■ Section 552(b)(4), 5 U.S.C., exempts from FOIA "commercial or financial informa-

tion obtained from a person and privileged or confidential." Section 552(b)(7)(A) exempts "records or information compiled for law enforcement purposes, but only to the extent that the production of such … information could reasonably be expected to interfere with enforcement proceedings." Plaintiff argues that, as a matter of law, these exemptions are inapplicable because they conflict with the more specific provisions of the Clean Water Act, 33 U.S.C. §§ 1251 *et seq.*

Section 308 of the Clean Water Act provides, "Whenever required to carry out the objective of this chapter, … the [EPA] Administrator shall require the owner or operator of any point source to … provide such … information as he may reasonably require." 33 U.S.C. § 1318(a). It further provides that, except for trade secrets, "[a]ny records, reports, or information obtained under this section … *shall* be available to the public." § 1318(b) (emphasis added). EPA contends that section 308 is inapplicable because it did not require submission of the studies the plaintiff seeks. Rather, EPA argues, those studies were voluntarily submitted.

EPA regulations define voluntarily submitted information as: business information in EPA's possession—

(1) The submission of which EPA had no statutory or contractual authority to require; and

(2) The submission of which was not prescribed by statute or regulation as a condition of obtaining some benefit (or avoiding some disadvantage) under a regulatory program of general applicability, including such regulatory programs as permit, licensing, registration, or certification programs, but excluding programs concerned solely or primarily with the award or administration by EPA of contracts or grants.

40 C.F.R. § 2.201(i). Plaintiff contends that the studies it seeks were not voluntarily sub-

---

**1.** Under the Clean Water Act, the economic benefit gained by a violator of the Act is a factor to be considered in determining an appropriate civil penalty. 33 U.S.C. § 1319(d).

mitted because EPA could have required their submission under section 308.[2]

EPA admits that the studies contain information about economic benefits that accrued to the Telluride Company as a result of alleged violations of 33 U.S.C. § 1344. Section 308 specifically states that it is the objective of the Clean Water Act to carry out § 1344. Further, pursuant to § 1319(d), the economic benefit gained by a violator of the Clean Water Act is a factor to be considered in determining an appropriate civil penalty. It is unlikely that Congress would have required EPA to consider such information without providing EPA authority to obtain it. Cf. E.I. du Pont de Nemours & Co. v. Train, 430 U.S. 112, 133, 97 S.Ct. 965, 977, 51 L.Ed.2d 204 (1977) (considering the scope of EPA authority under Clean Water Act regulations and stating, "We do not believe that Congress would have failed so conspicuously to provide EPA with the authority needed to achieve the statutory goals."). Finally, an objective of the Act, set forth under the heading, "Congressional declaration of goals and policy," is public participation in the enforcement of Clean Water Act standards. 33 U.S.C. § 1251(e). In light of the foregoing, I find and conclude that the studies were not voluntarily submitted within the meaning of 40 C.F.R. § 2.201(i).

EPA has raised no other issues of law or fact regarding whether the studies were obtained under section 308. Moreover, EPA regulations provide:

> Information will be considered to have been provided or obtained under section 308 of the Act if it was provided in response to a request by EPA made for any of the purposes stated in section 308, *or if its submission could have been required under section 308.* . . .

40 C.F.R. § 2.302(b)(2) (emphasis added). I further find and conclude that the studies at issue could have been obtained under section 308, and thus, under the statute and regulation cited, are treated as obtained under section 308.

■ Next, the plaintiff argues that because the studies were obtained under section 308, that section's exemptions apply and the FOIA exemptions upon which EPA relies do not. "The courts are not at liberty to pick and choose among congressional enactments, and when two statutes are capable of co-existence, it is the duty of the courts . . . to regard each as effective." *Morton v. Mancari,* 417 U.S. 535, 551, 94 S.Ct. 2474, 2483, 41 L.Ed.2d 290 (1974). However, where statutes cannot co-exist, it is well settled that a specific statute controls over a general one. *Bulova Watch Co. v. United States,* 365 U.S. 753, 758, 81 S.Ct. 864, 867, 6 L.Ed.2d 72 (1961).

■ Here, it appears that section 308 of the Clean Water Act conflicts with FOIA. FOIA, which makes certain information available to the public subject to nine exemptions, was adopted in its modern form in 1967. *See* Pub.L. No. 90–23, 81 Stat. 54; 5 U.S.C. § 552. Section 308 was adopted in 1972. *See* Pub.L. No. 92–500, 86 Stat. 816, 858. Congress must be presumed to have known in 1972 of the nine FOIA exemptions it had adopted five years earlier. Nonetheless, it chose to create only one exemption, a trade-secrets exemption, for information obtained under section 308.

It is unlikely that Congress intended the section 308 trade-secrets exemption to supplement FOIA because FOIA already included a trade-secrets exemption. *See* 5 U.S.C. § 552(b)(4). Thus, it appears that Congress intended that information obtained under section 308 be subject only to that section's trade-secrets exemption. This conclusion is buttressed by 33 U.S.C. § 1251(e), which, as noted previously, sets forth Congress's goal of public participation in Clean Water Act proceedings.

I conclude that section 308 applies to the plaintiff's request for information, and that the FOIA exemptions do not. EPA has presented no evidence demonstrating that the

---

**2.** EPA contends that "[t]he Administrator did not, and probably could not, require the Telluride Company to provide either of the two" studies. (Def.'s Resp. at 7.) Moreover, it has submitted a letter from Telluride Company's attorney to EPA stating that "EPA's authority to request such information . . . is lacking." (Def.'s Ex. B at 6.) However, the question whether EPA could have required submission of the studies is a legal question that EPA's "evidence" does not answer.

studies the plaintiff seeks fall within the section 308 trade-secrets exemption. Accordingly IT IS ORDERED that the plaintiff's motion for summary judgment is granted and EPA's motion for summary judgment is denied.